*Davis*, for plaintiff; *Harlan* and *J. H. Daviess*, for defendant.

---

EJECTMENT.

## Larman *vs.* Huey's heirs.

### ERROR TO M'CRACKEN CIRCUIT.

Case 25.

January 5.

Judge MARSHALL delivered the opinion of the court.

1. It is essentially a question of practice, whether after a plaintiff says he has concluded his testimony, and a motion is made to instruct the jury as in case of nonsuit, the court shall permit plaintiff to introduce farther proof, and it has a broad discretion. This court is not in the habit of reversing, even though the nonsuit should have prevailed without the proof which is subsequently made, provided there has been a fair trial, and the verdict is sustained by the evidence.

2. Where one of two joint tenants sells and conveys a tract of land and gives possession, the grantee's title and possession is adverse to that of the other joint tenant.

3. One tenant in common or lessee, holding a sufficient length of time by a continued open renunciation of the title of his co-tenant or landlord, may acquire title.

4. One joint tenant conveys the whole, his grantee enters claiming the whole in severalty, he is possessed of the whole, and such an adverse holding for twenty years tolls the right of entry of the other joint tenant. And if a distinct title from the commonwealth, by entry, survey, or patent, be acquired and held for seven years, the right of entry of the joint tenant, or those claiming under him, will be barred. (*Gillaspie* v. *Osborn*, 3 A. K. Marshall, 72.)

5. One tenant in common, in possession is not estopped to buy in, and assert title, under a distinct adverse entry, survey, or patent, and protect his possession under the statute of limitation of 1809.

This action of ejectment was brought in October, 1848, on the demise of the heirs of Robert Huey against James Larman, for the recovery of one half of an island in the Ohio river opposite or near the mouth of the Tennessee. The jury found a verdict for the plaintiff; and the defendant's motion for a new trial having been overruled, he prosecutes a writ of error for the reversal of the judgment rendered against him. On the trial, the plaintiff read in evidence an old patent from the state of Virginia granting the island to Jacob Myers, and to make out title under that patent, read the record of a suit in chancery in the Fleming circuit court, brought by George C. Johnson in 1815 against certain persons designated in the bill as devisees of Jacob Myers, and as unknown heirs of his devisees, which showed that a decree was rendered against the defendants for a large sum of money claimed as due from said Myers, and that among various executions and sales for its satisfaction, a sale was made of this island in 1818 under an execution directed to the sheriff of Livingston county, at which George C. Johnson became the purchaser. The sheriff's deed conveying the island to Johnson in 1818 was also read, and a deed from Johnson conveying it to John Berry and Robert Huey in 1821; and then proved that the lessors were the heirs of Robert Huey; that Huey and Berry claimed the land under said deed, and that between 1821 and 1825 Huey had wintered some stock on the island one winter, and in the spring left a man living on it, but witness did not know that he entered to take possession; also, that Huey died in 1842, and that his eldest child was at the time of the trial twenty-eight years old, and was married before his death; and that the defendant Larman, on whom the declaration and notice were served in October, 1848, was then in possession of the island.

Here the plaintiff's counsel announced that he was through with his opening evidence, and the defendant's counsel moved for instructions as in case of a

nonsuit: But while this motion was under discussion, the plaintiff's counsel asked and obtained permission to introduce additional evidence, declaring, at the same time, that he had been and still was of opinion that it was not necessary. Under the leave thus obtained, additional testimony was adduced by the plaintiff, on which the motion for a nonsuit was overruled, and the cause proceeded and was decided upon the evidence produced by both parties.

The defendant excepted to this action of the court, and now insists, not only that the court erred in not instructing the jury to find as in case of a nonsuit, and in permitting additional evidence on the part of the plaintiff after the motion for such instruction was made, but also that these errors, though there were no others in the case, should produce a reversal of the judgment. But although we are satisfied that upon the evidence above stated, the plaintiff had not made out any title from Myers, because the Fleming record, which did not even contain the will of Myers, furnished no evidence as against the defendant, who was no party to it, either of the death of Myers or of the fact that the defendants in the Fleming suit were either his heirs or devisees, and there was no other proof of these facts, which were essential to make out title from Myers; and there was no proof of any such connection between Robert Huey and the defendant as might dispense with proof of title; still, it does not follow that the court erred in not giving the instruction after the plaintiff asked to introduce additional evidence then in his power, or in permitting him to introduce such evidence. Nor does it follow that this court should reverse the judgment even for an erroneous refusal to instruct as in case of a nonsuit, if there were no other error but that of allowing further evidence to be adduced by the plaintiff, or requiring evidence on the part of the defendant.

The question as to the propriety of allowing the plaintiff to introduce additional evidence, and thus to

remove if he could the grounds of the motion for a nonsuit, if essentially a question of practice, upon which the court presiding over the trial must have a broad discretion, to be exercised with a view to the convenient dispatch of business, and more especially to the attainment of justice in the particular case, by means of a fair and full trial, and an impartial verdict. It is not incompatable with these objects nor with the rules of procedure intended for their attainment, for the court to permit counsel to correct errors of omission, whether arising from inadvertence or from mistaken opinion of the law, provided the correction may be made without inconvenient delay, and is such as while it is essential to a fair presentation and trial of the case on the one side, does not occasion surprise nor throw any unjust burthen upon the other. And it can make no difference in principle, whether the counsel asking to supply the omission retracts the erroneous opinion which led to it, or makes his motion in deference to the opinions of others. The court sits not to award a triumph to the skill or acuteness of counsel, but to insure, as far as may be, a fair trial and a just decision of the conflicting rights of their clients. Even where there has been an erroneous refusal to instruct as in case of nonsuit, in consequence of which the trial has proceeded with further evidence on both sides, this court does not, according to its present practice, reverse a judgment founded on a verdict for the plaintiff merely because, at a particular stage of the trial, a motion for a nonsuit was erroneously overruled. But if upon the whole evidence the verdict is justified, and if there be no other error of the court in conducting the trial, and no ground of surprise or discovery, for which a new trial should be granted, the judgment is affirmed because a reversal would only result in a new trial upon the same evidence, when there has already been a full and fair trial, and a verdict uninfected by the error of overruling the motion for a nonsuit. If the motion in this case had been peremptorily overruled,

LARMAN  
*vs.*  
HUEY'S HEIRS.

1. It is essentially a question of practice, whether after a plaintiff says he has concluded his testimony, and a motion is made to instruct the jury as in case of nonsuit, the court shall permit plaintiff to introduce farther proof, and it has a broad discretion. This court is not in the habit of reversing even though the nonsuit should have prevailed without the proof which is subsequently made, provided there has been a fair trial, and the verdict is sustained by the evidence.

and without further evidence on either side a verdict had been found for the plaintiff, the judgment must have been reversed, because the verdict was not sustained by the evidence and would be presumed to have been infected by the error of the court in determining that there was evidence to authorize it. But if, after the motion was overruled, the trial had proceeded and the case was placed fully before the jury on the evidence, the question on the motion for a nonsuit would have lost its consequence, and would, in effect have been merged in the more important questions of evidence and of law which might have affected the verdict. Here the motion was not in form, though it was in fact, overruled by permitting the plaintiff to adduce further evidence. And as this was not, in our opinion, an abuse of discretion, since it involved neither inconvenient delay nor any surprise or injustice to the defendant, we think the case is to be regarded just as if there had been no motion for a nonsuit, and cannot now be decided as if it stood upon that motion alone. We proceed, therefore, to state briefly the additional facts appearing in the evidence on both sides.

The additional evidence introduced by the plaintiff, pending the motion for a nonsuit, consisted, first, of a deed from Berry conveying the island to one McIlyea, on the 1st of January, 1828; secondly, of the record of a chancery suit against the heirs of one Pell, showing a decretal sale of the island as his, and a commissioner's deed therefor to the defendant Larman; and thirdly, of parol evidence conducing to prove, that in 1828, 1829, or 1830, one Harrison took possession of the island, claiming under McIlyea, from whom he purchased; that neither of them lived on the land, but about the year 1834 Harrison made a small farm there and cultivated it; that while in possession, he had it surveyed and patented to himself, saying it was to defend himself against the John U. Waring claim; that his claim was only for fifty acres, (which was the quantity mentioned in the

patent and deed above referred to,) and if he could hold the surplus on the island it might make him whole; and that Harrison sold to Pell, who entered under his purchase in 1836 or 1838, and died in possession. The defendant then moved to exclude this additional testimony, which the court refused to do, and then overruled the motion for a nonsuit. As to which, we only add to what has already been said; that the evidence was competent and relevant, and its admission was within the discretion of the court.

The defendant proved and read a deed from Jacob Myers to Christopher Greenup, dated in 1798, conveying this island, but which was never recorded. Also the records of several judgments against Robert Huey, and of executions thereon, some of which were returned no property, from 1826 to 1831; but one of the returns stated a levy and sale of land in 1827, (without designating what land,) and that John Berry was the purchaser at the price of $1 50; and proved by a witness that he was present at the sale in 1827; that Huey was also present, and that his interest in the island was sold under the execution and bought by Berry. There was also evidence conducing to prove that Huey had listed land for taxation up to 1827, but not afterwards. But no deed was produced from the sheriff to Berry; and it was proved that none could be found on the record. The defendant also read a patent from the commonwealth of Kentucky to Harrison, dated in February, 1833, and granting this island; and proved that Harrison had a small improvement on it in 1831, when the witness first knew it.

The plaintiff then proved by a witness that a short time before Berry's death, which was in 1839 or 1840, he heard a conversation between him and Huey; in which the latter claimed an interest in the island; and the same witness and others also heard him claim such interest on other occasions. One witness stated that he had heard Berry say that Huey had an interest in the island, but gives no date to this admission.

Another witness stated that Harrison, while in pos-session, told him that McIlyea said Berry had prom-ised to get a conveyance of Huey's title, and that McIlyea had told him the same, and had said in 1829 or 1830, that he was going to see if Berry would get Huey's title. And that Harrison, when survey-ing the land to enter it for himself, said Berry and McIlyea had promised to get Huey's title, but he be-lieved they would fail, and he would get a patent for the whole island, as Berry's deed only called for 50 acres, and in that way make himself whole—speaking at the same time of Waring's claim.

This is the substance of the whole evidence. So much of it as details the assertion of claim by Huey, in the absence of the party then holding the interest derived from Berry's deed to McIlyea, and so much as details the admission of any party not being the defendant, after such party had parted with his in-terest, and in the absence of the defendant, was not competent evidence against the defendant, and so far as objected to should have been excluded. But taking it altogether, it will be perceived that the plain-tiff at last failed to prove that the defendants in the Fleming suit were the devisees or heirs of Myers, and even if he had proved that fact, the deed to Green-up in 1798, showed that Myers had parted with his title before his death. By reason of which it would seem, according to the cases of *Ralls* v. *Graham* 4 *Mon.* 122, and *Beverly* v. *Hancock*, 6 *B. Mon.* 532, no title passed either to the heirs or devisees of Myers, and none was acquired by Johnson's purchase under the decree and execution against him. But, as the plaintiff has failed to make out a derivation of title from Myers, it is not necessary, so far as concerns the motion for a nonsuit, to decide whether, as credi-tor of Myers and purchaser under a decree against his devisees or heirs, Johnson and his alienees could be affected by the unrecorded deed to Greenup, under which there had been no possession, and of the ex-istence of which it does not appear that any of them

had notice, until, by some means unexplained, it came to the hands of the defendant or his counsel.

As the plaintiff makes out no title from the commonwealth, nor any paper title further back than the sheriff's deed to Johnson, who conveyed to Berry and Huey, the right of recovery depends entirely upon the effect of the deed to Berry and Huey, and of the subsequent transfers and possession. This last mentioned deed (from Johnson) made the grantees, Berry and Huey, joint tenants, and the entry of either *prima facie* enured to the benefit of both. But we do not understand that there was any actual possession, in fact, at the date of Berry's deed to McIlyea, and whether there was or not, as that deed professes to convey the whole island, it asserts claim to the whole, and an entry under it by Mr. McIlyea or his vendee Harrison, could not be presumed to be an entry for the benefit of the other tenant in common, since it would be made under a deed which asserted title to the whole, and thus denied the title of the other to any part. The deed of Berry did not, it is true, destroy the title of Huey, nor pass it to the grantee; but the making and the acceptance of that deed was a denial of Huey's title and assertion of exclusive claim and title, and furnishes evidence of the intent with which the entry under it was made. It is also evident from other facts that Harrison claimed an exclusive possession necessarily adverse to the title or claim of Huey. And it may be assumed that whatever possession was taken and held under the deed to McIlyea was of a similar character.

That one tenant in common may thus acquire an adverse possession, is decided in the case of *Gillaspie* v. *Osborn*, 3 *A. K. Marshall*, 72–3, and follows necessarily from the concession made in numerous cases, that even a lessee or actual tenant, though taking possession under his landlord, may convert this friendly into an adverse possession. And if Harrison's possession was not originally adverse to Huey,

---

LARMAN
*vs.*
HUEY'S HEIRS.

2. Where one of two joint tenants sells and conveys a tract of land and gives possession, the grantee's title and possession is adverse to that of the other joint tenant.

3. One tenant in common or lessee, holding a sufficient length of time by a continued open renunciation of the title of his co-tenant or landlord, may acquire title.

it certainly became so when he surveyed the land in 1833, for the purpose of obtaining a patent to himself, or at least and by his actually obtaining a patent for it. The recorded deed from Berry to McIlyea and the entry under it by the grantee or his vendee, and the surveying and patenting of the land by the latter, were notorious acts of which Huey was bound to take notice, which he must be presumed to have known, and which, as is to be inferred from the evidence, he did, in fact, know, since he complained of Berry's conduct, threatened a suit against him, and was moreover near enough to know, as it was his duty to know, the state of the possession of the land in which he claimed interest.

If the possession taken under Berry's deed to McIlyea was under claim to the whole island, and therefore exclusive, and adverse to Huey, the mere expression, by any party claiming under that deed, of a desire that a conveyance or release might be obtained from Huey, or of a complaint that it had not been done, would not suffice to change an adverse into an amicable holding, and would, in fact, be entitled in itself to no effect. If the entry had been made under the joint title, and looking to Huey for protection or for a perfection of the title by conveyance, then some specific and definite act of disclaimer would have been necessary to change its character, and slight circumstances might prevent this effect. But if the entry and possession were originally hostile, the mere declaration or acknowledgment of an outstanding interest or title in Huey, the acquisition of which was desired or deemed important, would not be such a recognition of his title as would affect the possession. And whether the possession was originally adverse, or became so by subsequent disclaimer sufficiently notorious, there is no question but that if so continued for a sufficient length of time, it would bar any right of entry on the part of the cotenant or of any other adverse claimant. Twenty years would mature such a possession, however

wrongful in its commencement, into a right. And such a continued adverse possession would not only (so far as now appears) have barred this action, but would have tolled the right of entry under the deed to Greenup.

But recurring to the fact that Johnson acquired no title by the sheriff's sale and deed, and therefore passed none by his own deed to Berry and Huey, the material question in the case is, whether the mere fact of their having made a joint purchase, and received a joint deed which passed no title and conferred no possession nor the right of possession, is yet, as between them and against the alienees of either, sufficient title to authorize a recovery by the one out of possession, unless barred by a continued adverse possession of twenty years. In other words, is the tenant who acquires and holds the possession under the separate and exclusive claim of one of these joint grantees estopped for twenty years from disputing the right of the other to enter upon that possession? Or to state the question still more explicitly, does the entry and possession of one of the tenants in common, taken under an exclusive claim to the whole and held adversely to the other, give to that other a right of entry, and thus supply a title to the one against the other which both together had not as against third persons, but which the tenant in possession cannot dispute, until the end of twenty years? If these questions must be answered in the affirmative, then, although the plaintiff failed in his attempt to make out title under the patent to Myers, nothing short of twenty years adverse possession under the deed from Berry to McIlyea could have defeated a recovery; and the defendant could not avail himself of the outstanding title in Greenup, nor even of the patent to Harrison, either to show the best title in himself or his vendors, if that had been the only patent read in evidence, or to claim the benefit of the seven years' act of limitation (of 1809,) in case the plaintiff should be considered as claiming under an

adverse patent. The court, however, instructed the jury not only that if Berry and those claiming under him recognized Huey's title, the defendant was estopped from denying it, but also that the patent to Harrison enured to the benefit of Huey, and could not be set up against his heirs, unless the title of Huey had been conveyed by himself or by the sheriff.

In the case of *Gillaspie* v. *Osborn*, before cited, (3 *A. K. Mar.* 72,) Gillaspie, the lessor of the plaintiff, read in evidence a patent to himself and Robert Johnson, making them tenants in common, which covered the land in contest. The defendants read a junior patent to Benjamin Johnson, under which some of them derived title by conveyances from B. Johnson, or his heirs, to themselves, and others derived title from B. Johnson to Robert Johnson, co-patentee with Gillaspie, and by conveyances from Robert Johnson to themselves. And all of them proved a possession of their respective parcels for sixteen or eighteen years, and relied upon the seven years limitation. The plaintiff moved for an instruction that the possession of the defendants who claimed under Robert Johnson, (the co-patentee of Gillaspie,) was not adverse to the claim of the lessor, and that they were not protected by the statute, which the court refused to give. This court decided that the refusal was correct—saying that one tenant in common was not estopped from acquiring and holding an adverse possession, and that if the defendants held adversely, that is, as the court previously explains, if they entered and held possession claiming the whole in severalty and not as co-tenants of Gillaspie, which was held to be sufficiently proved, "it results, as they deduced a connected title from the interfering grant to Benjamin Johnson, they are within the letter as well as the spirit of the act of 1809."

These defendants were obviously technical tenants in common with Gillaspie, not in a mere nominal title, but in the elder legal title, and they are admitted to have been so in the decision of the case, and yet it

was decided that they might not only acquire and hold a possession adverse to him, by claiming the whole in severalty, but that they might set up their separate junior title, and referring their adverse possession to it, thus entitle themselves to the benefit of the seven years limitation act to bar a recovery under the elder title of which they were co-tenants with the lessor.

It seems impossible to deny, without overturning the authority of this decision, which we are not prepared to do, that if McIlyea or his vendee Harrison entered under the deed from Berry, claiming the whole island in severalty, and not as co-tenants of Huey, they took possession adversely to him; and that if such adverse possession was continued by Harrison until he obtained his patent in 1833, and afterwards by him and his vendees for more than seven years until the death of Huey, and until the commencement of this action, the present defendant (who deriving the possession and title not only under the deed from Berry to McIlyea, but also under the patent to Harrison,) is, so far as his relation to the plaintiff's lessors is concerned, in at least as favorable a condition as the defendants in the case cited, for the application of the seven years' act of limitation, is entitled to protect his possession under that act, provided it has been of such a character as is required by the act, and provided the case be one in which the plaintiff claims under an adverse interfering entry, survey, or patent. The question as to the actual character of the possession was one for the jury to decide upon the evidence, with instruction from the court as to the nature of the possession required by the act. That the lessors claimed under the patent to Myers is manifest, from their attempt to connect themselves with it, and from their reliance on it, both in the evidence and in the instructions moved for by them and given by the court, and might have been proved even if they had not attempted to trace Johnson's title. According to the case of *Gillaspie* v. *Osborn*, this is a claim adverse to the junior patent, under

4. One joint tenant conveys the whole, his grantee enters claiming the whole in severalty, he is possessed of the whole, and such an adverse holding for 20 years tolls the right of entry of the other joint tenant.— And if a distinct title from the commonwealth, by entry, survey, or patent, be acquired and held for seven years, the right of entry of the joint tenant, or those claiming under him, will be barred. (*Gillaspie* v. *Osborn*, 3 *A. K. Marshall*, 72.)

which the defendant claims, and therefore within the statute; and we do not perceive that this conclusion is at all affected by the question, whether the possession under the deed to McIlyea was originally adverse, or became so by subsequent notorious acts, and so continued afterwards.

It follows, from what has been said, that the court erred in instructing the jury that if McIlyea or Harrison entered under the deed to McIlyea, and the possession was so transmitted through their vendees to the defendant, the patent to Harrison enured to the joint benefit of Harrison and Huey, and cannot be set up to defeat this action, unless when Berry conveyed to McIlyea he had a deed from Huey or from the sheriff. The instruction leaves out of view the question of an adverse possession, or assumes that it did not or could not exist, or that it was immaterial, when it might be material and decisive in connection with a separate title in the possessor. It moreover asserts that the patent to one tenant in common enured to the benefit of both, which, although it is often said in a court of equity, is not even there either universal or unconditional in its application, and it is not true in a court of law if it mean anything more than that it cannot, in general, be set up by one cotenant to defeat a recovery; and this proposition, with which the instruction closes, is in direct conflict with the case just cited and commented on, which decides that such title may be set up in connection with an adverse possession to defeat the action under the seven years' limitation act.

5. One tenant in common, in possession, is not estopped to buy in, and assert title, under a distinct adverse entry, survey, or patent, and protect his possession under the statute of limitation of 1809.

The next succeeding instruction (No. 4,) deduces the same conclusion from the same facts, with the additional one that the jury shall believe that Harrison, while in possession, recognized the title of Huey under Johnson's deed. We have already said, in effect, that the mere fact of Harrison and his vendees being technical tenants in common with Huey, did not estop them from claiming under the patent referred to, nor from setting it up to protect an adverse possession

under the act of 1809. The instruction should have informed the jury what was meant by the word recognized. Even the admission that Huey had by Johnson's deed a good title to one half of the island, would not of itself have subjected the possession to that title, nor have estopped the possessor making the admission from holding against that title or acquiring and using one adverse to it. Much less could the mere admission or recognition that Huey had an interest in such title as passed by Johnson's deed have that effect. If Harrison, while in possession, had admitted to a stranger that he held possession under Huey, this would only have been evidence, and not an estoppel. And if there be any mode of merely recognizing Huey's title which would have estopped the defendant, if made by Harrison while in posesssion, it should have been defined, that it might have been seen whether it was authorized by the evidence and the law. The instruction, as it stands, is misleading and erroneous.

With respect to Berry's purchase under the execution against Huey, we are of opinion that although it was proved that he purchased Huey's interest in this island, the fact is of no avail in this suit except as an excuse for Berry's conveying the whole to McIlyea, unless by twenty years possession a conveyance of Huey's interest could be presumed. But the same possession would defeat the action on the ground of limitation alone, unless the lessors were within the saving of the statute, which is not shown.

With respect to the deed to Greenup, we remark that although twenty years continued possession, adverse to it would have tolled the right of entry under it, so that it could not protect any defendant as an outstanding title; still, as it passed the title of Myers at its date, and there was no adverse possession prior to Johnson's purchase, the deed, if admissible as evidence at all, proved that Johnson, if a *bona fide* creditor and purchaser, did not acquire the title of Myers

by the sheriff's sale and deed, unless it should be presumed from the non-recordal of the deed, from the great lapse of time since its date, and from the fact that no possession was ever taken or right asserted under it, that it was not a real transaction, or that it was made for the benefit of Myers himself, or for some particular purpose, which being answered, the deed became useless and was forgotten. If the title was held by Greenup for the use of Myers, it was liable to execution for his debt, and if sold under a decree against his heirs or devisees, the sale and sheriff's deed passed his title.

But although upon well settled principles the defendant had a right to rely upon twenty years adverse possession in himself, and those under whom he claimed, to defeat the recovery of the lessors, notwithstanding the original tenancy in common; and although upon the authority of the case of *Gillaspie* v. *Osborn* we are of opinion that he might rely upon the title under the patent to Harrison to make out, in connection with an adverse possession of the proper character and continuance, a bar under the act of 1809, we are of opinion that he has no right to set up an outstanding title in a stranger, nor to dispute the title of his co-tenant on any other ground but that of a conveyance of it, actual or presumed, or of such continued adverse possession, with title from the commonwealth in himself, or those under whom he claims, as will protect him under the act of 1809, or such as being continued for twenty years is sufficient of itself to bar a recovery, and to discharge all estoppels.

The principles above stated cover, as we think, all material questions in the case.

Wherefore the judgment is reversed, and the cause remanded for a new trial on principles consistent with this opinion.

*Robinson, Johnson, Husbands,* and *O. Turner,* for plaintiff.; *Harlan, B. Monroe,* and *Crockett,* for defendant..