### Sackett v. Jeffries, et al.

(Decided January 14, 1919.)

Appeal from Harlan Circuit Court.

1.  Trusts—Use of Word Trustee.—The word "trustee" after the name of a grantee in a deed, does not of itself operate to create a trust, if in fact the grantee is not trustee for another, but takes title to the land in his individual capacity; in such case the word "trustee" will be treated as *descriptio personae*.

2.  Adverse Possession—Character of Title.—In order to perfect title by adverse possession, the holding must be actual, continuous and unbroken for the statutory period.

3.    Quieting Title—Actual Possession.—A plaintiff can not maintain an action in equity to quiet title to lands unless he be in the actual possession thereof, at the time of the commencement of the action; but where defendant asserts claim of ownership to the land and prays to have his title quieted thereto, the court acquires jurisdiction of the entire controversy and may properly decide the case upon its merits, regardless of whether the plaintiff was in the actual possession of the lands at the time the suit was instituted.

CLEON K. CALVERT for appellant.

JAMES H. JEFFRIES and METCALFE & JEFFRIES for appellees.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

This litigation results primarily from the misemployment of the word "trustee," a word having a fixed, definite meaning in the common law of this country and of England, by the purchaser of land. E. H. Patterson purchased several hundred separate tracts of land in Bell and adjacent counties in the years 1889 and 1890, the deeds, at his suggestion and against the advice of counsel, being made to "E. H. Patterson, trustee." From the evidence we are thoroughly convinced that Patterson was not trustee for any one in the purchase of the land, but added the word after his name for the sole purpose, as he stated, of lending importance and seeming strength to his land manipulations. In explanation and justification he pointed to the fact that while he was engaged in purchasing the lands in question, an English syndicate with large capital was acquiring lands in the same territory in the name of an individual as trustee, and that this word "trustee," thus introduced and vouched for, appeared to carry some mystic charm which inspired confidence. He, therefore, attached it, and wholly unintentionally engaged himself in a tangled web of litigation.

The facts are, he entered into an agreement with a New York syndicate, afterwards incorporated under the name of Kentucky Coal, Iron & Development Company, to sell them at $19.00 per acre, certain coal bearing lands then owned by him, and all other lands he might acquire in the counties named, not to exceed 100,000 acres. The price was to be paid $7 in cash and $12 in stock of the company. At this price Patterson was able, after paying all expenses, to realize a substantial profit on the property. Being a man of moderate means Patterson was compelled to transfer the lands to the company and col-

lect the purchase price as fast as he could get together an acreage of sufficient size to warrant such action, because he needed the money with which to buy other lands to be turned in like manner., Finally the land boom subsided, leaving Patterson with many tracts of land under contract, only paid for in part, and the company refused to accept or pay for other lands. Differences then arose between Patterson and the company which need not here be related. In the meantime Patterson acquired a tract of 236 acres in Harlan county near the Leslie county line, from R. N. Fultz. It was surveyed and title abstracted in the same manner as other tracts acquired about the same time. The deed was made to "E. H. Patterson, Trustee," as were all the others. But the other tracts, or nearly all to which Patterson perfected his title, were transferred by deeds to the Kentucky Coal, Iron & Development Company. Patterson, however, made no deed to the company for the Fultz tract, and it is now the bone of contention.

In 1892 the Kentucky Coal, Iron and Development Company conveyed all the lands to which reference is above made, except the R. N. Fultz tract, to a Belgian corporation, styled Central Appalachian Company, and in 1894 the Belgian Company conveyed the same tracts to the International Development Company, an American concern, and in 1901 the International Company, by commissioner, pursuant to certain court proceedings, conveyed all the lands aforesaid, including the Fultz tract, to the KentuckyCoal Lands Company, incorporated. This was the first time that the Fultz tract was included in the chain of conveyance. The Kentucky Coal Lands Company in 1913 conveyed the Fultz tract with others to appellant Sackett, and thereafter this action in equity was instituted by Mrs. Mary H. Jeffries, the only child and heir at law of E. H. Patterson, deceased, joining her husband and her mother, Mrs. Patterson, as plaintiffs, against appellant Sackett, alleging ownership and actual possession of the Fultz tract, and praying that her title be quieted thereto, and that the deeds from the International Company et sequentia be cancelled and annulled in so far as they attempted to convey title to the Fultz tract. By the answer it is alleged that Patterson was the agent of the Kentucky Coal, Iron & Development Company in the purchase of the lands transferred to it, including the Fultz tract, and that he took title to and held the Fultz tract as trustee for the

use and benefit of said corporation; and that appellees, who are the heirs of E. H. Patterson, occupy the same status and bearing towards the corporation and its vendees as respects this land. The defendant Sackett also relied upon adverse possession. By the third paragraph of the answer defendant asserts that plaintiffs have been constantly giving it out in speech that they are the owners of the tract described in the petition; that this is without foundation in fact or law; that it casts a cloud upon the title of the defendant Sackett to the lands in question and injures and impairs his use and enjoyment thereof, while rendering the lands of less vendible value, and he seeks to have the cloud removed by the court quieting the title in him. The prayer of the answer is, among other things, "that he be now forever quieted in his title to and possession of said land as against all claims of the plaintiffs, Mary H. Jeffries, James H. Jeffries, and Emma D. Patterson."

Appellant insists that the judgment, which was for the plaintiffs, should be reversed: (1) because the land in question was purchased by Patterson acting as agent for the Kentucky Coal, Iron & Development Company, and held by him and his heirs, the plaintiffs, for the use and benefit of said company and its successors in title; (2) because Sackett together with others under whom he claims had acquired title to this land by adverse possession prior to the institution of this action; (3) the plaintiffs below were not in the actual possession of the lands at the time of the commencement of this action, and cannot, therefore, maintain an equitable proceeding to quiet title.

Having already disposed of the first contention, we will now proceed to consider the second—adverse possession. Title by adverse possession can only be acquired by the actual holding and enjoyment of land under a claim of right which is opposed to and inconsistent with any other claim. No possession of land is sufficient to ripen into title unless the holding has been such as to furnish the plaintiff a cause of action for the recovery of the lands every day during the fifteen year period. Possession must not only be actual but it must be open, notorious, continuous, adverse and peaceful for every hour of every day of the whole fifteen year period. It is, therefore, incumbent upon one asserting title by adverse possession to show affirmatively continuity of

possession, and failing in this his cause must fall. In this case there are several periods of a year or less in which Sackett and his predecessors did not have actual possession of the lands in controversy, or any part thereof, during the period of fifteen years upon which he relies for the perfection of his title. In fact, there was no period of fifteen years from the time Patterson dealt with the Kentucky Coal, Iron & Development Company, in 1890, up to the bringing of this action, in which the appellant and his predecessors in title had the actual possession continuous and uninterrupted of said tract of land. There was no color of title in appellant and his predecessors until 1901, if indeed then, and this action was instituted in October, 1913. Different and distinct periods of possession, such as is disclosed by this record, can not be added to establish a bar so as to constitute title by adverse possession. White v. McNabb, 140 Ky. 829; Sparks v. Jackson, 142 Ky. 17.

On the lands in question are three small houses and two or more fields. The houses were occupied at the time Fultz sold the land to Patterson, and the fields and fencing around them were there at said time.

During the land boom nobody paid any attention to the occupancy of the surface of the land, because it was chiefly valuable for its mineral. Several years after the boom, agents of appellant's predecessors, by mistake and thinking that the land had been conveyed by Patterson to their predecessors in title, took possession of the Fultz tract and rented it for short periods at a time. The tenants sometimes occupied the lands and sometimes did not. At least there are two or three breaks or periods of time covering months in which no one lived upon the boundary in question. The old fencing that was on the farm at the time Patterson acquired title continued in part, and so likewise did the houses and other improvements. There was nothing done upon the farm which was calculated to excite interest or affirmatively show that some one other than the legal title-holder was in possession and claiming adversely, unless these things were manifested to the occasional visitor, who happened to find a tenant in possession; but the mere fact that one found the old fencing, houses and other improvements on the place, which were there at the time Patterson acquired title, was not sufficient to put him on notice that another was claiming adversely to the paper title, unless there was some one in actual posses-

sion; that frequently there were gaps in the fence, or a whole line of it down, and this too at times when there was nobody in actual possession. We, therefore, conclude that the facts of this case with respect to the adverse holding of Sackett and his predecessors, were not such as to ripen their claim into title.

Third: It is a well established rule that a plaintiff can not maintain an action in equity to quiet title to land, unless he be in the actual possession thereof at the time of the commencement of the action; but there is this exception to the rule: where the defendant asserts claim of ownership to the land in controversy and prays to have his title thereto quieted, the trial court acquires jurisdiction of the entire controversy and may properly decide the case on its merits regardless of whether or not the plaintiff was in the actual possession of the land at the time the suit was instituted. "Where the defendant asserts his title to the land and prays judgment quieting his title, he can not complain that the court settled a controversy which he asked to be settled, although it may be settled against him." Fox v. Cornett, 124 Ky. 435; Johnson v. Farris, 140 Ky. 135; Hall v. Hall, 149 Ky. 817. The defendant by his answer in this case asserted title in himself to the lands in controversy. In a separate paragraph he alleged facts which established his right to have his title quieted as under section 11 Kentucky Statutes, and his prayer is in part that his title be quieted. It, therefore, follows that he is not now in position to complain that the court took jurisdiction of the controversy and determined the question of superior title even though plaintiff was not in the actual possession of the lands, which is doubtful.

No error appearing to the prejudice of the appellant, the judgment is affirmed.