## Tobien, et al. v. Gentry.

(Decided January 28, 1919.)

### Appeal from Warren Circuit Court.

1. Deeds—Constructive Notice.—A recital in a deed of record that the grantor is selling only a homestead in the lands, is constructive notice to all subsequent purchasers, and precludes their claiming the fee simple title as innocent purchasers.

2. Marriage—Marriage of Slaves—Legitimacy.—Society as well as the statutory law of this state recognized the validity of customary marriages among slaves before the civil war, and where a colored man and woman, by the custom of times, were recognized as husband and wife; lived as such, and raised a family, the issue of the marriage will be regarded as legitimate and entitled to inherit from their ancestors, even though no certain or specific form of marriage ceremony was performed and no witness testifies to having witnessed the ceremony.

3. Homestead—Abandonment of by Widow—Deeds.—A widow who sells and attempts to convey her homestead right in the lands of her deceased husband, abandons the same and her grantor takes nothing by the deed.

4. Homestead—Innocent Purchaser.—One is not an innocent purchaser of land for value who knows the fact that there are un-

known heirs, or who is confronted by a deed in his chain of title specifically reciting that the widow's homestead right alone is conveyed.

RODES & WALLACE and GEORGE H. GALLOWAY for appellants.

SIMS, RODES & SIMS for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Reversing.

An old colored man named Hart Covington died intestate, domiciled in Warren county, in 1910, the owner of a tract of about fourteen acres of land, which he occupied as a homestead. He had been married three times. He was married the first time before the breaking out of the Civil War, and, of course, was a slave. According to the custom of the times he belonged to a master named Ben Covington, a prominent citizen of Warren county, and Hart bears the family name of his master. Before Covington purchased Hart he belonged to another master in the State of Tennessee; so also did his wife, Sallie.

When Covington acquired the two negroes he kept them together with their little family for a few years, and then sold Sallie and retained Hart. To this slave marriage were born three children, among them a girl named Martha, who is the mother of Ida Tobien, plaintiff in this action. All the children of Hart Covington are dead, and the plaintiff, Ida, is his only lineal descendant. After the death of Hart Covington a suit was instituted by his widow, Julia, in the Warren circuit court, against Rebecca Shields, a creditor, and the unknown heirs of Hart Covington, to settle the estate of Hart Covington. In that action it was alleged that Rebecca Shields held a mortgage for $300.00 on the little tract of land left by Hart, and that certain other debts were owing by the estate. This allegation was also made: "Plaintiff states that the said decedent (Hart Covington) left surviving him as his only heir at law, the plaintiff, Julia Covington, his widow, and that she is informed and believes there are unknown heirs of the said Hart Covington by a former and slave marriage." A warning order was entered, warning the unknown heirs of Hart Covington to answer the petition in thirty days, and Byron Renfrew, a regular practicing attorney, was appointed to inform the unknown heirs of the nature and pendency of the action.

By his report it is shown, "I have tried diligently to ascertain both their names and places of abode (of the unknown heirs), and that after an examination of the papers I am unable to make any affirmative defense." The cause was referred to the master commissioner to receive and report claims against the estate. As no answer was filed, a judgment was entered subjecting the property to the mortgage lien and other debts, and allotting homestead from the remainder to the widow. By report of sale the master commissioner stated that the property was appraised at $1,000.00; that Claude Thomas purchased 7 11/12 acres for $490.75, which was enough to pay the debts and cost; that there remains 6¼ acres of land. This 6¼ acres was assigned to the widow as homestead, and shortly thereafter, and on the 27th of April, 1911, the widow, Julia Covington, executed to Claude Thomas a deed for her homestead in the lands in consideration of $300.00 cash in hand paid. The deed recites "the party of the first part has bargained and sold, and does by these presents bargain, sell, transfer and convey unto the party of the second part, his heirs and assigns, all her right, title and interest of whatsoever nature it may be." In concluding the description in the deed, this provision is inserted: "The same being that part of the Hart Covington lands set apart to party of the first part as the widow of said Hart Covington, *as a homestead,* by judgment of the Warren circuit court, and for more particular reference is made to the papers in suit No. 7138, Julia Covington, Admrx. v. Rebecca Shields, in the Warren circuit clerk's office." This deed was recorded on May 1, 1911, in the proper office. Shortly thereafter Thomas sold the entire Hart Covington tract, including that which he had purchased at the master commissioner's sale, and the homestead which he had purcased from the widow, and it was again and again transferred until it reached the appellee, Noel Gentry, who now holds and claims it. It will be observed that the appellant, Ida Tobien, was not a party to the action brought by the widow to settle the estate of Hart Covington, although she resided in the city of Bowling Green at the time the action was instituted and brought to trial. The chancellor dismissed the petition of Ida and she prosecutes this appeal.

The evidence establishes beyond question that Ida is the granddaughter and only living descendant of Hart

Covington. She is therefore entitled to the property in controversy, unless (1) she has forfeited her right, as contended by appellees, by her laches, or in failing to join in the action to settle the estate of Hart Covington and assert her right as heir; or, (2) has been guilty of such conduct as would constitute an equitable estoppel against her. Neither of these things appears to be true. Appellee insists that as he and his predecessors in title purchased the land in good faith, believing Aunt Julia to be the owner in fee thereof, appellee is entitled to protection, especially in view of the fact that section 1399a Kentucky Statutes provides that where the property of a colored father or mother has passed to innocent purchasers, or has been divided out and sold, or distributed by order or judgment of a court of competent jurisdiction, the heirs of a slave marriage shall not be entitled to recover the same. This contention is not well founded for the reason that Thomas, the purchaser from the widow, was also the purchaser of a part of the land at the commissioner's sale and was, therefore, acquainted with all the facts, and the further fact that the deed from Aunt Julia to Thomas specifically recites that she was selling to him only a homestead right, and as this deed was of record the subsequent holders and claimants are concluded by its terms and are in no better position than was their grantor, Thomas, because they had constructive notice of the fact that Aunt Julia conveyed only her homestead right. The delay in bringing this action by Ida is not so great as to have misled, deceived or injured the appellee in his rights under the facts of this case. The widow was entitled to occupy the homestead so long as she lived, but when she undertook to convey it she abandoned it and the remainderman was entitled to immediate possession. Jones v. Green, 26 R. 1191; Bryant v. Bennett, 22 R. 1866; Kimberlin v. Isaacs, et al., 23 R. 42; Freeman v. Mills, 101 Ky. 142; Clay v. Wallace, 116 Ky. 599; Block v. Tarrent, 28 R. 1067; Phillips v. Williams, 130 Ky. 779; Overby, et al. v. Williams, 170 Ky. 140; Love v. McCandless, 157 Ky. 353; Jackson v. Claypool, 179 Ky. 662.

The chief insistence of appellee is that the evidence fails to show that Martha, the mother of Ida, was begotten and born to Hart and Sallie during the existence of the marriage relation between the slaves. All the evi-

dence in the case conduces to prove that Hart and Sallie were married in Tennessee according to slave custom, and had lived together there as man and wife for some years before they came to Kentucky. Some of the witnesses say that Martha was born in Tennessee before her father and mother were purchased by Covington; while others say that Martha was born in Kentucky, at the Covington home. However this may be, all the evidence tends to prove that Martha was an issue of the slave marriage between Hart 'and Sallie. There is no evidence to the contrary, and several old colored people acquainted with Hart Covington and his wife, Sallie, gave evidence concerning their married relation existing at the time of Martha's birth. So long as Sallie lived Hart acknowledged her as his wife. Even after Sallie was sold by Covington to Smith, Hart continued to live with her as his wife and to claim her as such and, as was the custom among negroes, went to her house each Saturday night to visit his wife. That was one of the privileges of a negro slave. While he was not allowed to remain with his wife through the entire week, it was his right, according to custom acknowledged among both white and black, to visit her each Saturday night. Hart always acknowledged Martha as his child. From this evidence we are fully persuaded that Martha was the issue of a customary marriage between Hart and Sallie.

The judgment is, therefore, reversed with directions to enter a judgment in conformity with this opinion.