**KENTUCKY WOMEN'S CHRISTIAN TEMPERANCE UNION, Appellant,**

v.

**Myra B. THOMAS et al., Appellees.**

Court of Appeals of Kentucky.

March 17, 1967.

William E. Allender, Duncan & Allender, Bowling Green, for appellant.

B. G. Davidson, Bowling Green, for appellees.

870

CLAY, Commissioner.

Appellant owned a tract of land in Warren County. In a suit to sell the land, appellees claimed title by virtue of adverse possession. This issue was submitted to a jury which found for appellees. On this appeal appellant's only contention is that it was entitled to a directed verdict because the evidence was not sufficient to support the jury's finding.

■ The property involved is rough, hilly land. The claims of the appellees are separate. Appellee Thomas was deeded approximately 100 acres in the tract by a former occupant in March 1948. Appellee Tabor was conveyed approximately 16 acres by the same grantor in July 1949. Since appellant held the superior record title, it was incumbent upon appellees to prove 15 years' adverse possession prior to July 1964. (Their grantor did not possess the land at the times the deeds were made.) There is no evidence that any notice of the adverse claims was actually brought home to appellant.

■ It is well recognized that in order to acquire title by adverse possession it must be hostile, actual, open, notorious, exclusive and continuous for the required statutory period. Tartar v. Tucker, Ky., 280 S.W.2d 150. In the present case our problem centers on the question of whether appellees' possession was sufficiently notorious, exclusive and continuous.

The proof for appellee Thomas was in substance that in 1948 she seeded and fertilized the ground to produce grass, and later some clearing was done by a bulldozer. Hay was cut off the land on the average of every other year, and at one time a corn crop was raised. In about 1956 a pond was dug. From 1959 to 1963 the land was placed in a soil bank. Though there was no cultivation, bushes were cut each year. In 1961 and 1962 appellee Thomas executed mineral leases but there was no development thereunder.

■ Notoriety, exclusiveness and continuity of possession are often evidenced by the erection of physical improvements on the property, such as fences, houses or other structures. We have none of those here. In their absence, substantial activity on the land is required. As said in Combs v. Ezell, 232 Ky. 602, 24 S.W.2d 301, 305:

"Adverse possession of land may be said to be founded in trespass; it must be a trespass constantly continued by acts on the premises. It must challenge the right of all the world; the claimant must keep his flag flying, and present a hostile front to all adverse pretentions."

■ It has also been said that possession must be so continuous as to furnish a cause of action every day during the entire 15-year period. Noland v. Wise, Ky., 259 S.W. 2d 46. While this principle perhaps should not be applied literally, it would rule out sporadic activity which would not bring home to the true owner reasonable notice of a continuing hostile claim of right. For this reason the occasional cutting of timber is generally held not to constitute an adverse holding. See Noland v. Wise, Ky., 259 S.W.2d 46, and cases cited therein.

While seasonal and substantial cultivation of the land every year possibly might be sufficiently notorious to create something in the nature of a constructive continuity, the activities of appellee Thomas on this land fall far short of that. Only one crop was raised. The cutting of hay and bushes were invasions of only brief duration. When the land was placed in a soil bank for four years it simply lay dormant. Cutting bushes during those years raised a very small and temporary flag to signal hostile possession.

■ In our opinion the use of this land by appellee Thomas was not sufficiently notorious, exclusive or continuous to create title by adverse possession.

With respect to appellee Tabor, who had purchased his acreage in July 1949, he did

not begin his activities on the land until the following month. He did cut some weeds and sow some grass, and cut Canadian thistles every year. Occasionally he cut tier poles for tobacco, and hauled wood to burn a plant bed. He executed mineral leases in 1955 and 1962, but there was no development on the land.

His acts were less substantial than those of appellee Thomas. In addition, his adverse possession commenced at a time less than 15 years prior to the date he asserted his claim.

We believe the court erred in not directing a verdict for appellant as to the claims of both appellees Thomas and Tabor.

The judgment is reversed, with directions to enter judgment for appellant in accord with its motion for judgment notwithstanding the verdict.

All concur.