## Noe v. Russell, et al.

(Decided March 26, 1926.)

### Appeal from Lee Circuit Court.

1.  Adverse Possession.—Evidence clearly showing breaks in claimant's possession within 15 years held insufficient to establish title by adverse possession.

2.  Ejectment.—Plaintiff in ejectment must recover on strength of his own title.

3.  Ejectment.—Plaintiff in ejectment may show title by paper title from Commonwealth or proof of open, notorious, actual, continuous, peaceable, and adverse possession for 15 years.

**4. Adverse Possession.**—Adverse possession as basis of title must not only be actual, but so continued as to have furnished cause of action every day during period.

S. P. STAMPER for appellant.

CHESTER GOURLEY and GOURLEY, GOURLEY & PARRISH for appellees.

OPINION OF THE COURT BY JUDGE McCANDLESS— Affirming.

Plaintiff claims possessory title to a tract of fifteen acres of land situated on a ridge east of Little Sinking creek in Lee county. Included in the boundary is a long, narrow strip of three or four acres, lying between the crest of the ridge and a parallel sandstone cliff, a short distance below, which is claimed by defendants, and on which they have drilled three oil wells. In this action plaintiff seeks to recover a certain interest in the oil and gas produced therefrom. At the close of his evidence the court gave a peremptory instruction for the defendants and he has appealed from the judgment dismissing his petition.

It appears that prior to 1900, E. W. Cox, plaintiff's vendor, owned a tract of land of 70 acres, lying contiguous to this tract, and also had two deeds embracing as much of the fifteen-acre tract as lay west of the sand cliff, and a third deed to a larger boundary in which it was recited that he relinquished this fifteen acres in favor of the grantors in that deed. It further appears that in a suit in this court, Ashcraft v. Cox, 76 S. W. 121, 25 K. L. R. 545, it was adjudged that the sandstone cliff was his eastern line, and as this tract was then in timber and uninclosed, it is clear that he had neither possession of nor title to the disputed land. In October, 1900, Cox conveyed to one Smith about one-quarter of an acre within the tract claimed by plaintiff, but below the sand cliff. On this Smith erected a storehouse and in November, 1901, Cox sold and conveyed to H. J. Crabtree a recited boundary of fifteen acres, embracing the land in dispute and also the Smith storehouse and lot. H. J. Crabtree converted this store building into a dwelling and moved therein in the fall of 1902, and this is the beginning of plaintiff's claim of possession under color of title. Also in the year 1900, Cox sold the 70-acre tract to General A. Dennis, who im-

mediately moved thereon and lived upon it until the year 1911.

H. J. Crabtree testifies that he lived upn the fifteen-acre tract for eighteen months; that he moved off and it was vacant for a time; he made a verbal sale of it to J. D. Crabtree and J. D. Crabtree sold in the same way to one Adams, who likewise.sold to one Woosley and Woosley sold to Gen. A. Dennis, the owner of the seventy-acre tract, a deed of conveyance being made to Dennis in March, 1905, by H. J. Crabtree, who still held the legal title. J. D. Crabtree never lived on the land, but had a tenant who lived on it one summer and fall, and he thinks this was just before he transferred the land to Adams. It does not appear that any one else occupied the premises until the conveyance to Dennis in 1905. Dennis states that he had tenants on the place, but the building was removed in 1907, and no one lived on it thereafter, although he says he cut the timber on the land afterwards and perhaps cultivated some of it, and that he claimed it as his own. He sold both tracts to Charley Beech in 1911, and placed his son in possession and moved from the county. On his return eleven months later, one Andy Cox was living on the place, but there is an entire failure of proof to show any later occupancy even of the seventy acres until 1914, when Beech conveyed both tracts to appellant Noe, who testifies that there was a tenant in possession at the time he purchased it. He moved on the seventy-acre tract, made three crops and moved away. Beech was introduced as a witness, but did not testify as to occupancy at the time he owned it, and no other witness did so except Dennis as above stated, it not appearing when Cox moved on the place or when he left it. After making the third crop Noe moved away and has not returned. He left a tenant in possession, but there was no evidence as to how long this tenant remained or of any one else moving in. As the burden was upon appellant to show title, it clearly appears that there was a complete failure in this respect. The occupancy of his predecessors under color of title began with H. J. Crabtree in 1902. There was a break in the possession when he sold it in 1904, and the evidence is by no means satisfactory as to the character of possession between that date and Dennis' purchase in 1905. Dennis lived on a different tract of land, but had tenants living on the fifteen acres for two or three years, when the dwelling thereon was finally removed.

If we assume without so deciding that his continued cultivation of the fifteen-acre tract, though living elsewhere, was evidence of an adverse holding, there are clearly breaks in the possession after he sold to Beech in 1911, as at least three years of the period between that and 1914 are not covered by the evidence, hence the chain of possession was clearly broken at that time and did not begin to run again until appellant Noe took possession in 1914, less than fifteen years before this suit was brought. A further break is shown after Noe purchased, but it is unnecessary to emphasize this as in no event has appellant shown continuous possession and this is essential to establish title.

In White v. McNabb, 140 Ky. 828, we said:

"The rule is well settled that a plaintiff in ejectment must recover on the strength of his own title. He may do this in one of two ways: First, by showing a paper title from the Commonwealth; second, by showing that he and those through whom he claims have been in open, notorious, actual, continuous, peaceable and adverse possession of the property in controversy for a period of fifteen years. In this case the appellee made no attempt to show a paper title from the Commonwealth. His right to recover, then, depends upon whether or not he, or those through whom he claims, acquired title by adverse possession. To acquire title in this manner the adverse possession must not only be actual, but so continued as to have furnished a cause of action every day during the whole period."

And to the same effect are Overton v. Overton, 123 Ky. 311; Trotter v. Cassidy, 3 A. K. M. 365; Sparks v. Jackson, 142 Ky. 17; Wilson v. Catron, 179 Ky. 290; Sackett v. Jeffries, 182 Ky. 696; Meek v. Davis, 189 Ky. 64. The facts of this case fall so clearly within the principle laid down in the above cases that a discussion of the legal principles is deemed unnecessary.

Wherefore, perceiving no error, the judgment is affirmed.