## Cairo City Ferry Company v. Cocke et al.

(Decided May 24, 1932.)

188

HENRY F. TURNER for appellant.

M. C. ANDERSON and FLAVIUS B. MARTIN for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Reversing.

The petition of the Cairo City Ferry Company claims title by conveyance and adverse possession to a certain five acres of land and appurtenant ferry rights on the Ohio river, a short distance above its mouth, and charges that the defendants, Bettie N. Cocke, R. I. Cocke, and their lessees, were taking possession of the land and committing trespass thereon for the purpose of operating a ferry from it, for which purpose it was peculiarly fitted. An injunction was sought to prevent a continuing trespass and the threatened interference with the rights of the plaintiff as the owner of a ferry franchise granted its predecessor in title, the Ellis Ferry Company, by a special act of the Kentucky Legislature.

The answer traversed the allegations of the title and rights and admitted the acts and purposes ascribed to the defendants. They set up title by record and adverse possession in Bettie N. Cocke and R. I. Cocke, and their lease to their codefendant Graves, who had employed Birney as manager of a proposed ferry business to be conducted on and from the land. The only relief asked by the defendants was to have the petition dismissed and judgment for costs.

The reply and subsequent pleadings presented several points of attack and defense. But those are the essential issues. Other pleas and evidence under them are subsidiary.

In a special act of the Legislature, approved March 16, 1871, it is recited that Powhatan Ellis, Richard I.

Cocke, "and others" were the owners of a tract of land and of a ferry for skiffs and flatboats from it to the city of Cairo, Ill., just opposite the land, by grant from the county court of Ballard county, and that public convenience could be better subserved by the establishment of a steam ferry at that point or some point on the land to run both to Cairo, Ill., and to some point on the Mississippi river near Birds' Point in Missouri. By this act, Ellis, Cocke, and Bullitt "and their associates and successors" were created a body politic and empowered to establish at any point "on the said land they may think proper" a steam ferry to run from that point to the places named "so long as they may run the same in such manner as to fully accommodate the public interest." No name was given the corporation in the act, but those vested with authority called it the Ellis Ferry Company.

Over a period of several years, including the date of the special act and the deed of February 19, 1880, to be considered, there was pending in the common pleas court of Ballard county a suit involving title and partition of a 10,000-acre patent called the Ronald survey. This suit is referred to in the record as the Stringer suit. The record in it shows that Bullitt, as attorney for Richard I. Cocke, who died in 1873, acquired his interest in the ferry franchise. On February 16, 1880, the court's commissioner conveyed a two-thirds interest in the 5 acres of land and the franchise to Bullitt and a one-third interest to Ellis "for the use and benefit of the Ellis Ferry Company." The deed was duly approved by the judge and acknowledged before him. These two men, three days later, February 19, 1880, executed a deed to the corporation for this property. Thereafter, Bullitt offered to file in the suit some pleadings to the effect that an understanding with reference to the land to be used in the operations of the ferry had not been consummated; and a prayer to have the orders and conveyances set aside. But these pleadings were rejected by the court. The deeds, therefore, stood as made and were duly recorded.

The plaintiff claims title through a deed executed by the Ellis Ferry Company to it some time about the year 1882, which was never recorded and was destroyed by fire. It also pleaded and undertook to establish by evidence that its officers were the officers of the Ellis Ferry Company, and that it had succeeded to all its rights and powers in the land and ferry.

To defeat plaintiff's claims, the defendants attacked the commissioner's deed to Bullitt and Ellis, contending that it is not in accord with the judgment under which made, as he was not ordered to convey any land; that its terms are not sufficient to convey the ferry rights, and that they own the property as heirs of Richard I. Cocke and through a deed of Powhatan Ellis to John F. Cocke, dated February 22, 1898, which, after describing certain parcels of land (not including the five acres), conveyed "any other lands or interest in said Ronald Survey in Ballard County, Kentucky, of which he is seized as shown by Commissioner's Reports" in the old Stringer partition suit.

And as stated, both parties claim through adverse possession.

It was finally adjudged that the Ellis Ferry Company had acquired title under the deed of 1880 from Ellis and Bullitt and had not been divested of that title either by conveyance or adverse possession on the part of the plaintiff. It was further held that the East Cairo Ferry Company was in actual possession at the commencement of the suit, and not the Cairo City Ferry Company. Accordingly, it was adjudged that the plaintiff had not manifested its right to the relief sought. The temporary injunction which had issued against the defendants was dissolved and the petition dismissed with costs. Both parties prayed an appeal from that judgment, but only the plaintiff has prosecuted it. A number of grounds of reversal are submitted to us, which are but different reasons why the court should have held the Cairo City Ferry Company to be the owner of the land and of the ferry franchise. Our sole problem is whether those reasons, or any of them, are sufficient to overcome the chancellor's conclusion.

As stated in Tri-State Ferry Co. v. Birney, 235 Ky. 540, 31 S. W. (2d) 932, 933, East Cairo is but a name. About the time of the first transactions related a large tract of land was laid off in town lots and an effort made to establish a city there, but without success. The point was the termini of the Illinois Central Railroad and Mobile & Ohio Railroad, whose cars were transported across the river on boats. Their property and the inclines were on either side of the 5-acre parcel in controversy. After a time a bridge was built, but passengers would often leave the trains and take passage on numerous skiff

ferries being operated by individuals from such nearby land as suited their convenience.

The Cairo City Ferry Company has been in existence since about the year 1858, and has principally plied its boats between Wickliffe, Ky., on the Mississippi river, and Cairo, Ill., which is directly across the Ohio river from East Cairo. Sometimes on account of ice in the Mississippi, and occasionally to let off passengers and freight, its boats would stop at the latter point. The business was of negligible value until the advent of automobiles, when ferry rights at the place became of increasing commercial importance. This controversy seems to be a renewal of that reflected in the Tri-State Ferry Company case, supra. The plaintiff was a silent partner with that company in its business. In September, 1929, during the pendency of that appeal, the East Cairo Ferry Company was incorporated by the officers and stockholders of the Cairo City Ferry Company and the Tri-State Ferry Company, and it bought out Birney's franchise and property rights for $15,000. Several months thereafter, Mrs. Bettle N. Cocke, widow and beneficiary under the will of John F. Cocke, son of Richard I. Cocke, deceased, executed a lease in the name of the Ellis Ferry Company, and individually, of this 5 acres to Graves. W. B. Birney (brother of R. I. Birney, who had sold out) was employed by Graves to run the business, and for that purpose obtained a boat from his brother. In undertaking to take possession of this property under that lease, they precipitated this lawsuit.

The history of the parcel of land forming the scene and the basis of the litigation is an extended one, and the record contains much that is of value only for its historical nature. We need not go behind the commissioner's deed of February 16, 1880, to Bullitt and Ellis. It is too late now to attack it collaterally, for it appears to have been executed under authority of the court and bears the judge's certificate of examination, approval, and acknowledgment.

As stated, those two men deeded the property to the Ellis Ferry Company on February 19, 1880. That corporation never exercised its ferry rights granted by the Legislature. Other than tradition that there was such a company, it is really not heard of except the evidence of its conveyance of this property and of a suit prosecuted in its name years afterward to recover certain accretions

to this and other land, which will be adverted to later in this opinion.

Captain J. S. Hacker, president and general manager of the Cairo City Ferry Company, has been connected with it since 1877 and appears to have been at all times its principal operating official. For many years he was master of the boat and general factotum. He testified that about the year 1880 the Cairo City Ferry Company bought this land and the franchise rights of the Ellis Ferry Company for $1,250, and free transportation to John F. Cocke and his family. Ever since that time it has held the land under that deed and exercised all the franchise rights of that company. Furthermore, its officers have been the officers of the Ellis Company, although it does not appear that any formal election was held or that any corporate records were kept. The captain remembered to have seen the deed, which was signed by Cocke, as president of the Ellis Ferry Company. The records of his company showed that it had paid the cash consideration at the rate of $250 a year for five years. During all the subsequent years Cocke and members of his family had ridden on the company's boats without charge. The deed was not recorded and was destroyed by fire which burned its building in 1882 or 1883. The company's account book showing the payments was used upon the trial of the Reichert Case, 184 Ky. 150, 211 S. W. 403 (to which we shall refer), and he had not seen it since. Other officers of the company testified to that record of payments. The only evidence tending to contradict this unequivocal testimony of a conveyance is the bare statement of Mrs. Cocke that she had never heard of it and had not signed any deed to the property. Of course, her signature was not required, as the conveyance was by the corporation. There is also introduced into the record some testimony of Captain Hacker given in the federal court in other litigation in which he stated he did not know whether the Cairo City Ferry Company ever had a deed to the property or not. However, he testified in that case that his company had acquired and had exercised ownership of it. The fact that Cocke and his family had the right of free transportation on the plaintiff's boats and exercised that right is admitted by everybody, although, as will be developed, the defendants say it was for another consideration.

The Ellis Ferry Company, according to Captain Hacker, never operated any boat, and the Cairo Com-

pany has had tenants upon this land continuously since 1882 and has consistently seen that others did not acquire any prescriptive rights. During the course of his testimony, the good-natured Captain said: "As a matter of fact I have been struggling for forty years to hold on to that five acres that everybody seems to love so much." And humorously added, "Really, I am only holding on to it as a sort of amusement because as long as I can hold that I am going to stay in this country."

The first man to operate a ferry from this property was a former slave, Green Forgey. He was succeeded about 1877 by John King. Frank Foss came after him and ran a boat from the land until 1913. These men had been permitted to use the land on a percentage basis, although it appears their revenue was but little. In 1913, Joe Broadway beached a houseboat on the land and began operations as a ferryman and fisherman. From time to time there were other fishermen squatters and some who used the land for ferry purposes. The company put up notices against trespassing. John Hall followed Broadway, and he in turn sold out to R. I. Birney, who, as stated, sold out to the East Cairo City Ferry Company. At the time of the trespasses charged in this lawsuit., Chapman was living in a houseboat on the land and paying rent to the company, and it was also under lease to the East Cairo Ferry Company by the plaintiff. It is shown by the plaintiff's witnesses that it listed and paid taxes on this 5 acres during all this time, according to verbal testimony, and the assessor's records show it to have been listed by this company every year since 1913.

Frank Foss testified that he ran a skiff ferry from the land from 1885 until 1917 by the permission of the plaintiff, and that he reported to that company from time to time as to his business, although there were no profits to divide with it. When the railroad bridge was being built he was instructed by the company's president to watch out against encroachments, and, when it appeared that some dirt would likely be taken from this land he reported that matter to the company as its representative. About 1914, forcible entry proceedings were brought in the Ballard quarterly court against Joe Broadway and two others. But they were declared not guilty. Pending an appeal, the company entered into a written lease with Broadway as its tenant for the consideration of $1 a year. This lease with increases in the

rent was renewed until 1920. Joe Broadway corroborates the company's officers on this point. John Hall stated that he and Jim Lawson began operating a gasoline ferry from the Illinois Central land adjoining, and that he endeavored several times through the plaintiff as owner to get this property away from Broadway, but without success, and finally bought out Broadway and then obtained a lease from the Cairo Company. For the years 1923 to 1928 the Cairo Company leased the land to R. I. Birney for $500 a year. Birney was operating a ferry franchise granted by the Ballard county court from the adjoining property, but used this parcel in connection with it. The collection of rentals during these years from Broadway, Hall, and Birney is shown by the company's officers.

A number of old and intimate friends of John F. Cocke testified that he told them during the course of the years that he had sold this land and his ferry rights to the Cairo City Ferry Company. The subject was usually brought up when the witness noticed that he and his family were riding free on the boats and asked him about it. Cocke stated to them that the privilege was a part of the consideration for the sale. W. H. Jones testified that about 1880 Cocke told him that he had made a deal between the Ellis Ferry Company and the Cairo City Ferry Company by which he got, as the witness remembered, $1,000 or $1,200 and free transportation for himself and family. These witnesses stated they never heard of anybody claiming the land but the Cairo Company. W. A. Anderson, who was attorney for the plaintiff company from 1908 to 1926, testified to facts showing the continuous, adverse, and peaceable possession of this property by the Cairo City Ferry Company. About 1911, having through investigation found that the record title to this land was in the Ellis Ferry Company, he had a talk with Mr. Cocke about it. He related that the Ellis Company had sold its property and deeded it years before to the Cairo City Ferry Company for $1,250 and a lifetime pass, and he told Anderson that that company owned the 5 acres with water rights, and said he would be glad to make it another deed if the old deed was lost.

Mr. Anderson also testified that, in connection with the Reichert suit in 1916, he talked with Mrs. Bettie N. Cocke and her son and business manager, Richard Cocke, concerning the title to this property, particularly as to whether they had any records of the old Ellis Ferry Com-

pany. They could find none and made no claim to the land at that time. With the understanding that they were making no claim, and in fact had none, he had brought that suit in the name of the Ellis Ferry Company, as the record title was in it and the Cairo City Ferry Company regarded itself as its successor. Richard Cocke was a witness in that suit. Later on, when it appeared that the Cairo Company had lost interest in the suit to secure the accretions to other lands, he suggested to Richard Cocke that, if they did not belong to the Cairo Company, they belonged to his family. After conferring with counsel, Cocke reported that he thought there was nothing in such a claim and refused to have anything to do with it. The 5 acres and its accretions were involved in that suit, although no issue was made respecting it.

The above is a summary of the evidence introduced to sustain plaintiffs' claim of title and the right to be protected against invasion by the defendants thereon. A resume of the evidence tending to refute those claims follows.

The defendants and a number of others familiar with conditions testified that they never heard of anybody claiming the land except the Cockes, and it was generally accepted in the community as being their property. Mrs. Cocke stated that the free transportation had been given them as a matter of courtesy, as her husband was the representative of the company in Kentucky, and she thinks was its president. It is evident that she was not familiar with his relations to the Cairo Company, for hers is the only evidence tending to show such a connection; and it appears that others than Cocke occupied that office during the many years. He died in 1912. But the free passage continued until about the time this suit was instituted. A daughter testified that the passes were given the family because her father was a member of the Ellis Ferry Company and he claimed the land because he was the only one of the Ellis heirs in that part of the country. One old friend, who at the time was employed by Cocke, related an incident when Cocke told him that he should have taken some wagons and teams on the Cairo City Ferry Company boats as being his property, since he had the right of free transportation because he permitted the company to use the river front and water rights. There are a number of witnesses who related conversation with Cocke in which he referred to this tract as being his land. Sometimes he called it his ''Ellis Land.''

To several friends he stated that he did not intend to dispose of it as he wanted to reserve it for his children, believing that some time it would be valuable. When the railroad bridge was being built about 1889, Cocke refused to sell this property to the railroad company. He was interested in a contract to build the approaches and directed one of his men to get dirt anywhere along there, as he owned it all for two miles up and down the river. He did not point out this parcel particularly. One or more witnesses testified that Cocke showed them the boundary of this tract as being his lines, and the year before his death he advised a surveyor of the Reichert property not to include it as it belonged to him.

Concerning the use of the land by skiff ferrymen, the defendant's evidence is that they operated from adjoining land, particularly that next above this parcel which was closer to a point where a train which came up from Fulton, significantly called the "Whiskey Dick," stopped to discharge passengers who would embark on the river to the oasis of Cairo. Joe Broadway and others named were the ferrymen. For a while this competition was very keen. We have related the evidence of these ferrymen that they landed up and down the river where most convenient, and the defendant's evidence along this line is not a contradition of their testimony that they had the right to use this land under the authority of the Cairo City Ferry Company. It was, however, related that Cocke had said he would give Lawson, one of the ferrymen, and perhaps others, permission to use this land. After the forcible detainer proceedings referred to in 1913 or 1914, Garrett, one of the parties sought to be dispossessed by the Cairo Company, says that he obtained permission from the Cockes to beach his boat on this land. At that time Broadway, he says, was using the upper end. The younger Cocke testified that this was with his permission. In rebuttal, Broadway contradicts Garrett.

From time to time over the whole period concerned, and up until as late as 1927, different men obtained permission from the Cockes to bank and raft logs on this property. The use of it and the work was open and in plain view from Cairo, Ill., where the company's offices were located, and was visible from their boats plying the river. No objection was raised by the company to these operations. It is shown, however, that in only one

instance was any compensation paid to the Cockes for the use of this land and that was in 1899. During five years from 1924 to 1928, inclusive, it is certain that the property was under lease by the Cairo City Ferry Company to Birney, who paid it $500 a year. Years ago Cocke gave permission for the burial of some floaters and tramps killed on the railroad. In 1888 and in 1909 negotiations were had with Cocke to buy the cottonwood timber on the land, but no sale was ever made by him, although he was claiming to own it.

The defendants' claim to have listed this property for taxes during these years, but it was included without any special designation in their large body of land. When he died John F. Cocke owned about 1,500 acres on the river.

In contradiction of the testimony that "no trespass" signs had been put up by the Cairo Company, several witnesses say they never saw any such signs nor other evidence of control and use by that company. R. I. Birney testified that, although he had paid $500 a year to the plaintiff for five years under written lease, he had since learned that he had done so through mistake. Richard Cocke and his mother put a different interpretation on the conversations with Attorney Anderson relative to the Reichert suit, saying their reason for not becoming a party to it was that they did not believe they had any right to the accretions to the Reichert land, and as to the 5 acres they already owned it, and there was no need to go into a lawsuit about it.

The argument is made as to the competency of these declarations of the Cockes, on the ground that they are self-serving. Throughout the record appear numerous objections made to the examiner taking the depositions and his rulings thereon. But no exceptions were filed in court, as is required by sections 586 and 587, Civil Code of Practice, and the point was thereby waived. Harrel's Admr. v. Harrel, 232 Ky. 469, 23 S. W. (2d) 922; Prewitt v. Bull, 234 Ky. 18, 27 S. W. (2d) 399; Arrington v. Sizemore, 241 Ky. 171, 43 S. W. (2d) 699. The evidence is given such consideration as its nature warrants.

The record contains very convincing proof that the plaintiff is and has been at all times the owner of this land, particularly the evidence of its conveyance and certainty of occupancy by its tenants under written contracts since 1914, sixteen years before institution of this suit. Combs v. Ezell, 232 Ky. 602, 24 S. W. (2d) 301. The

evidence tending to show ownership in the Cockes is otherwise. During the latter years when the ferry business was valuable and the use of this land by Birney and others under lease was so notorious, the defendants interposed no objections and did not undertake to exercise dominion or authority over the land until May 26, 1930. The affirmative evidence tending to refute plaintiff's claims consists of verbal statements of John F. Cocke, of neighborhood belief or tradition that it belonged to them, and of occasional use by others gratuitously granted by Cocke and his son. Whatever value might be attached to the elder man's statements and acts in giving permisison now and then to a slight use of the property must be affected by the fact that this land was then of little value and he bore an intimate relation with the officers of the Cairo City Ferry Company. It must be remembered also that he owned practically all of the land up and down the river for a great distance and it was easy to misunderstand his statements then, and easier now, after the lapse of so many years, to put a different construction on them and attribute a different meaning than he intended to convey. Even so, the physical acts do not bring the evidence within the rule that to create title to land through adverse possession they must have been of such an exclusive, continuous, aggressive, and notorious character as to show a holding of the property and to put the owner of record title on notice of a hostile claim. Noe v. Russell, 213 Ky. 746, 281 S. W. 1033; Prewitt v. Bull, 234 Ky. 18, 27 S. W. (2d) 399. The sporadic permission granted parties to use portions of it in the manner outlined and payment of taxes are not sufficient. Kash v. Lewis, 224 Ky. 679, 6 S. W. (2d) 1098; Griffith Lumber Co. v. Kirk, 228 Ky. 310, 14 S. W. (2d) 1075. Cf. Strange v. Spalding, 17 Ky. Law Rep. 305, 29 S. W. 137, involving removal of sand from river island. The doctrine of adverse possession does not rest on verbal claims, but on acts and conduct such as evince a purpose to hold dominion over the property and as to indicate claim to exclusive ownership thereof. H. F. Davis & Co. v. Sizemore, 182 Ky. 680, 207 S. W. 16; City of Franklin v. St. Mary's Roman Catholic Church, 188 Ky. 165, 221 S. W. 503; Tennis Coal Co. v. Sackett, 172 Ky. 729, 190 S. W. 130, Ann. Cas. 1917E, 629; Lykins v. Keeton, 234 Ky. 421, 28 S. W. (2d) 472; Kentucky Union Co. v. Gilliam, 235 Ky. 316, 31 S. W. (2d) 388; Nelson v. Johnson, 189 Ky. 815, 226 S. W. 94.

Measuring the evidence by the standards outlined, we conclude without difficulty that the plaintiff met the burden it assumed and the defendants failed to overcome it. It remains to be seen whether the plaintiff is estopped to claim title under the plea of res judicata.

The plea of res judicata interposed by the defendants is based upon a suit filed in 1915 by the Ellis Ferry Company against Amelia Reichert. The petition in that suit set up and claimed title to the 5 acres involved in this suit in the Ellis Ferry Company under the deed from Ellis and Bullitt of February 19, 1880, and also claimed under that deed title to the riparian rights fronting, adjoining, and belonging to other property described in the old partition suit above mentioned, which included, as plaintiff averred, the accretions, amounting to about 227 acres, due to the gradual recession of the Ohio river. It seems that a special demurrer was first sustained to the petition of the Ellis Ferry Company, and then the Cairo City Ferry Company filed an intervening or cross-petition setting up its title. Later the first order was set aside, the special demurrer to the Ellis Ferry Company's petition was overruled, and the demurrer was sustained to the intervening petition of the Cairo City Ferry Company, and the prosecution of the suit continued in the name of the Ellis Ferry Company. The allegations of title on the part of the Cairo City Ferry Company were similar to those made in this suit; that is, that it had succeeded the Ellis Company in title and possession and it sought the same relief as that sought by the Ellis Company in its petition. That suit resulted in a judgment below against Mrs. Reichert for the accretions and also adjudged title to the 5 acres and accretions in the Ellis Ferry Company. Upon appeal the judgment was reversed in so far as Mrs. Reichert's property was concerned, and it was specifically held under that record that the Ellis Ferry Company was still in existence and had title to the 5 acres of land and the accretions thereto. Reichert v. Ellis Ferry Company, 184 Ky. 150, 211 S. W. 403. Other collateral suits were filed in that matter, and the entire record shows that it was prosecuted by the officers of the Cairo City Ferry Company in the name of the Ellis Ferry Company. Pursuant to the mandate of an opinion of this court on September 3, 1919, the circuit court entered its judgment adjudging the Ellis Ferry Company to be the owner in fee simple to the 5-acre parcel. The title to this 5 acres was not claimed by

the defendant in that litigation and was not brought in issue. It is a fundamental principle that to sustain the plea of res adjudicata the judgment relied on must have been rendered in a suit in which the parties or their privies were identical and occupied similar antagonistic relations and where the subject matter was the same. Akers v. Fulkerson, 153 Ky. 228, 154 S. W. 1101; J. F. Hardymon Co. v. Kaze, 241 Ky. 252, 43 S. W. (2d) 678; Asher v. G. F. Stearns Land & Lumber Co., 241 Ky. 292, 43 S. W. (2d) 1012. Should it be regarded that the Cairo City Ferry Company was the real plaintiff, still the appellees' plea would be unavailing for the defendants and issues are different.

Judgment reversed, with directions to grant the prayer of the petition enjoining trespass on the land.