Frye v. McKinley.

CASE 4.—ACTION BY MALINDA E. FRYE AND ANOTHER
AGAINST GREENE McKINLEY.—December 14, 1909.

## Frye v. McKinley

Appeal from Pulaski Circuit Court.

M. L. Jarvis, Circuit Judge.

From the judgment the surviving plaintiff appeals.
—Reversed.

1.. Ejectment—Proof of Title—Prior Patents.—The patent of P.
through which plaintiff derived title, excluded 700 acres pre-
viously patented. Plaintiff introduced no evidence showing
that the land in dispute was situated outside of the previously
patented boundaries; but there was evidence that the L. and
D. patents, which were prior in date to the P. patent, includ-
ed the land in dispute. Held, that defendant was entitled to
a peremptory instruction, under such evidence, for plaintiff's
failure to show title in herself.

2. Adverse Possession—Sufficiency—Question for Jury.—Where
the testimony of the parties in ejectment as to their posses-
sion under a claim of title by adverse possession was conflict-
ing, such claims should have been submitted to a jury.

3. Ejectment—Adverse Possession—Instructions.—An instruc-
tion that the jury should find for defendant as to 28 acres of
the land in controversy, when the evidence contained no
showing that defendant had other than a possessory title
thereto, and there was a sharp conflict with reference to ad-
verse possession was erroneous.

4 Adverse Possession—Instructions.—Where, in ejectment,
there was evidence, without contradiction, that plaintiff and
her vendors had a small part of the L. patent under fence
claiming it as their own for more than 20 years before de-
fendant and his vendors claimed to have acquired possession,
and the court charged the jury to find peremptorily for 28
acres of the L. survey, a further instruction, authorizing the
jury to find for plaintiff as to the balance of the land, unless
defendant and his predecessor in interest, prior to the "filing
of the action" had been in actual, notorious, continuous pos-
sion of the land by inclosures, was erroneous.

Frye v. McKinley.

5. Ejectment—Instructions—Verdict—Form.—In Ejectment the jury should be instructed that, if they find for plaintiff the whole of the land in contest, they should so say in the verdict, but, if they find for only a part, they should say for what part.

6. Trial—Verdict—Concurrence of Jurors.—Though nine jurors may find a verdict, if less than twelve agree thereon, all agreeing must sign the verdict; but, if they all agree, only the foreman need sign it

L. G. CAMPBELL and DENTON & WALLACE for appellant.

O. H. WADDLE & SON for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE NUNN—
Reversing.

This action was instituted by Dennis McClendon and appellant, Malinda E. Frye, against appellee in ejectment, to recover 120 acres of land in Pulaski county, Ky., of which they claimed to be the owners. The metes and bounds of the land were set out in the petition. By an amended petition they claimed that appellee was in possession of only 40 acres of the land described in their petition, and that it was situated on the west side thereof, that his possession was wrongful, and sought to eject him therefrom. Appellee answered denying that appellants were the owners of the 40 acres, or any part thereof, and alleged that he was the owner of same, gave the metes and bounds thereof, and alleged that he and his vendors had been in the actual, adverse, continuous possession thereof, claiming it as their own, for more than 15 years before the institution of the action; he claimed the land both under paper title and the statutes of limitations. Appellants filed a reply controverting the allegations of the answer. Some time during the pendency of the action, and before trial,

Dennis McClendon died, and there was never a revivor or attempted revivor of the action in the name of his heirs.   The action proceeded in the name of appellant, Malinda E. Frye, by which she sought to recover one-half of the land in controversy, as she and McClendon owned the 120 acres in equal parts. There was a trial of the case before a jury, and it returned a verdict in behalf of appellee.

It appears from the testimony that the 120 acres of land described in the petition, which included the 40 acres in contest, is situated within the boundary of a patent issued by the commonwealth to Joseph Porter in the year 1852.   The patent calls for 800 acres; but it is shown by other testimony to contain 2,500 acres, but excludes 700 acres within its boundary which was previously patented.   It was shown that after Porter's death this patented land was sold by an order of court; that one Elliott purchased it, and was made a deed to it by the court's commissioner; that Elliott  conveyed it to Charles  Frye; that,  after Frye's death, Dennis McClendon, a son-in-law, and J. T. Frye, a son, purchased the interests of all the other heirs in this 120 acres.   J. T. Frye sold and conveyed his one-half interest therein to one Burkett, who sold and conveyed same to appellant, the wife of J. T. Frye.   It was also shown that in the year 1835, the commonwealth issued to one Lair a patent calling for 28 acres, which the testimony shows, without contradiction, is situated within the Porter patent and nearly all within the 120 acres described in the petition.   It appears that one Johnson conveyed a boundary of land, described as the ''Lair patent of 1835,'' to a person by the name of Cain; that Cain conveyed it to Smith; that Smith conveyed it to Hill; that Hill

conveyed it to his wife; and that afterwards Hill and his wife conveyed it to appellee. There is no testimony showing that Lair conveyed to any one. Hill and wife conveyed to appellee land not included in the Lair patent, which, with the Lair patent, constitutes the 40 acres in contest. There is no testimony showing that Hill ever received a conveyance for the land not included in the Lair patent, except two or three acres conveyed to him by one Tartar. Eight or nine acres of the land not included in the Lair patent has never been cleared and lies between the Lair patent and a two-acre tract conveyed by Cain to Hill, which is not in the boundary claimed by appellant.

There was much testimony introduced by both parties with reference to adverse possession. Appellant's proof tended to show that she and her remote and immediate vendors had been in the actual possession by actual enclosure of about 1½ acres of the Lair patent for more than 30 years, claiming the whole survey of 120 acres until they were forcibly ejected by appellee's vendors about 10 or 12 years before the institution of this action; that 8 or 9 acres of the land was woodland and had not been inclosed by any one until 8 or 9 years ago, when appellee fenced it in. Appellee's testimony controverted these statements and tended to show that the woodland had been inclosed for more than 15 years; that the land included in the Lair patent had been cleared and fenced by him and his vendors and had been in their actual possession for more than 20 years before the institution of the action. It also appears from the testimony that the woodland referred to was covered by the Downey patent, which is referred to in the Lair patent, which shows conclusively that the Downey patent is prior

in date to both the Lair and Porter patents. Neither party connects with the title of Downey or Lair.

It will be observed, from what has been said, that the patentee of the land, Porter, through whom appellant derived title, had a patent that excluded 700 acres previously patented, and appellant introduced no testimony showing that the land in dispute was situated outside of the previously patented boundaries; but. on the contrary, there was evidence showing that the Lair and Downey patents, which are prior in date to the Porter patent, do include the land in dispute. The testimony conduces to show that the eight or nine acres of woodland is covered by the Downey, and the balance by the Lair, patent. In view of these facts, and under the authorities appellee was entitled to a peremptory instruction, unless appellant showed herself entitled to same or some part thereof, by actual, adverse possession; not that the evidence shows that he was the owner of the land by paper title, but because appellant did not show herself the owner thereof. She could recover only upon showing that the title was in her. Appellant alleged that she was the owner of the land and was entitled to recover it. Appellee denied her title and pleaded the statutes of limitations.

The issues involved here were also involved in the case of Fuller v. Kessee, 104 S. W. 700, 31 Ky. Law Rep., 1099. Appellant in that case brought an action to recover 200 acres of land which was included in a survey of 131,000 acres less 99,400 acres previously patented and excluded from. the boundary of the 131,000-acre patent. The testimony introduced in that case was similar to that in the case at bar. In that case the court said: "On this proof the defendants insisted that a peremptory instruction should have

been given the jury to find for them; but we think that the circuit court properly refused to do this. There was sufficient evidence that the partition deed had been lost to admit the proof of its contents. The record of the proceeding was read, and this showed that the deed was made, so the existence of the deed was indubitably established. The deed from two of the patentees for the undivided fourth of the land followed by the partition proceding, was sufficient to make out a prima facie case when it was shown that the land in controversy was not within the exclusion of the patent; and, while the proof introduced by the plaintiff on this question was not conclusive, it was sufficient to go to the jury.'' In the same case, the court again said: ''The burden is on the plaintiff to show that the land he sues for is not within the exceptions of the patent; but in a suit like this he need not so aver in the petition, as he is not required to plead his evidence.'' It thus appears in that case that the appellant introduced some evidence that his 200 acres of land covered by the large patent was situated outside of the boundaries of the small patents which were prior in date; therefore appellant in that case was entitled to have the issue submitted to the jury. But, if such proof had not been introduced, a peremptory instruction would have been granted. In the case at bar, no such proof having been introduced, a peremptory instruction should have been given, unless the testimony showed that she was entitled to have her case submitted to the jury on the question of adverse possession. To the same effect is the case of Steel v. Bryant et al., 116 S. W. 755 (to be officially reported).

We have stated the substance of the testimony produced upon the trial by the parties with reference to

their claims to the land by adverse possession. Their testimony was very conflicting, and the court should have submitted their claims to the jury by proper instructions. In our opinion the first instruction given by the court was incorrect. It is as follows: "You will find for the defendant the 28-acre Lair survey. You will find for the defendant the lands outside of the 28-acre Lair survey, claimed by the plaintiff, Malinda E. Frye, unless you shall believe from the evidence that Malinda E. Frye and those under whom she claims had been, prior to the entry of defendant and those under whom he claims, in the actual, open, notorious, adverse possession for 15 years, claiming same to well-marked and well-defined boundaries, and if you believe the latter state of case you will find for plaintiff, Malinda E. Frye, unless you shall further believe from the evidence that the defendant and those under whom he claims had, prior to the filing of this action on the 8th day of March, 1906, been in the actual, open, notorious, continuous, adverse possession of said land by inclosures; and, if you believe the latter state of case, you will find for the defendant, McKinley." The first clause of this instruction is peremptory to find for defendant the 28 acres contained in the Lair patent, when, according to the evidence, he showed no other than a possessory title thereto, and there was a sharp conflict with reference to adverse possession. The testimony shows, without contradiction, that appellant and her vendors, immediate and remote, had a small part of the Lair patent under fence, claiming it as their own for more than 20 years before appellee and his vendors, immediate and remote, claimed to have acquired possession thereof, which had ripened into a good title before appellee and his vendors claimed to have

become possessed thereof, and appellant was entitled to recover this land, unless she and her vendors had been dispossessed thereof, and it had been held by appellee and those under whom he claims by actual, adverse possession, which was open, notorious, and continuous for 15 years or more before the institution of appellant's action, and likewise as to the balance of the Lair patent, if she had so held possession thereof, unless she had been ousted by appellee and those he claimed under as before stated. The most patent error in the instruction was in permitting appellee to recover the land if he had been in the actual, open, notorious, continuous, adverse possession of the land for any length of time before the action was instituted. This part of the instruction, however, was made to apply to the land in controversy outside of the Lair patent. The court had given a peremptory instruction in behalf of appellee as to the Lair patent. Both parties were entitled to proper instructions on the question of adverse possession, as neither party connected herself or himself with the title of the patentee thereof.

Instruction No. 2, on the question of champerty, was proper. On another trial the court will give, in lieu of instruction No. 3, the following: If the jury should find for plaintiff, Malinda E. Frye, the whole of the land in contest, they should say so in their verdict; but, if they find for only a part of the land in contest, they should say what part. Nine jurors may find a verdict; but, if less than twelve agree on the verdict, all agreeing to it must sign, and, if they all agree to the verdict, the foreman alone may sign it.

For these reasons, the judgment of the lower court is reversed and remanded for further proceedings consistent herewith.