## Hooks v. Cornett Lewis Coal Co.

(Decided Oct. 8, 1935.)

G. G. RAWLINGS for appellant.

ED MORGAN and C. T. DOTSON for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Reversing.

Charley Hooks, a coal loader in the mine of the Cornett Lewis Coal Company, claiming that he had sustained an injury to his hand while going to his place of work, by falling and his hand striking an exposed, running electric water pump, filed this action to recover damages of the coal company. He asserts in his peti-

tion that he was ordered by the mine foreman "to work in a new place, or room in which he had never worked before that day and as he was on his way to the room and whilst walking along the mine entry, he stepped one foot between the ties of the mine track which was about one foot off of the ground, and the place being full of water caused him to fall into and against an electric pump in such a way that his left hand caught against the pump, cutting off his thumb, and second and third finger." He charged that the injury to his hand was "solely due to the negligence and carelessness" of the coal company "failing to have a guard board, in and around the pump, so as to prevent accidents" to its employees; that it failed "to keep a signal light of any kind near the pump" so as to warn its employees of its presence.

In an amendment to his petition he charged "it became necessary to enter the mine by way of East Main Entry, and while passing along the entry about one-fourth mile from the outside of the entry," he "was compelled to pass along by and near a running water pump in the mine which had its machinery and moving parts exposed to persons passing near same"; and the company "had failed to maintain the machinery and parts in a reasonably safe manner by covering same to keep its employees from coming in contact with its moving parts," and by this failure his left hand came in contact with the machinery and he sustained the injury; he did not know the dangerous condition of the machinery, but that the coal company did know of it.

The coal company traversed the petition and pleaded a settlement with Hooks and a release of its liability. To avoid the settlement and release, in his reply, Hooks alleged that the coal company carried for the benefit of its employees life and accident insurance, and that he settled with the Provident Life & Accident Insurance Company for its liability to him under its policy, and that at the time he did so it was represented to him, and that he and those making it agreed, the settlement concerned only the liability of the insurance company to him under its policy, insuring him as an employee of the coal company. This pleading was traversed by a rejoinder, thus completing the issues. On a trial to a jury the court directed a verdict for the coal company.

The propriety of the court giving the peremptory

instruction is the sole question here presented. It must necessarily be determined by the evidence which is brought here in a narrative form.

Hooks substantially testified that he started to begin performing services for the coal company at his "working place," about 7 o'clock a. m., and as he "got even with a water pump," he walked around the water on the track, his "feet slipped off the ties," and he fell "right into the running water pump." The company furnished batteries for lights, one of which he was carrying. It was weak and he could hardly see by the light it furnished; that he had not previously been in this entry; nor had any one warned him that the pump was not covered, and before he got to it he could not hear it running; did not know it was there until he got into it. He "was not injured at his place of work." He was on the way to work. He was carrying insurance with the Provident Life & Accident Insurance Company. "The premiums on it were paid through the office of the coal company." He claimed it was represented to him, at the time he heard read and signed the release, that he had insurance for 13 weeks at $10 per week; that he had only been off 47 days and could not recover the entire amount of insurance. He was owing the commissary, for goods, $72; that he only settled with the insurance company for this sum, plus $50 cash, and did so "in order to keep out of a suit." The parties who prepared the release and induced him to sign it assured him at the time it was for insurance only. He admitted it was read to him, but claimed that he did not understand it; that he could read, and began to read it when one of the men "picked it up and stated they were in a hurry to settle with some other parties," and would not let him read it. He declared he did not agree to settle, and did not settle, with the Cornett Lewis Coal Company for the injury sustained to his hand, and that the insurance was the only subject discussed by the parties in his presence.

The evidence in behalf of the coal company establishes "that the water pump was properly guarded and protected by an appropriate cover, and the same was not up against the track, but was back from the track so that if the plaintiff had fallen as he stated, he would not have fallen against the pump, and that he could not have gotten his hand into it without reaching over into

it with his hand." It also proved by a number of "witnesses that the settlement with him embraced his insurance claim, his commissary bill, and the claim of damages sued for in this action, and that at the time the settlement was made, these items were explained to and discussed with him, and Hooks stated at the time that he desired to make the settlement of his claim for the injury sustained to his hand, because "he wanted the $50.00 to go on a trip to West Virginia."

A written release was signed by him at the time the settlement was entered into, in which it was recited that the coal company was released "and forever discharged" "from any and all liability for all injuries and damages" "now apparent" or that "may hereafter develop on account of any injuries or damages theretofore sustained" by him; and that he thereby "acknowledged full satisfaction of all such liabilities and cause of action."

The pleadings and the evidence present the issue: Did the compromise or settlement in reality embrace only the item of insurance, or both the items of insurance and damages for the injury to his hand?

It is true the release and the allegations of the answer presenting it constituted a defense to his cause of action, since it was admitted that Hooks did not offer to return the consideration. It is likewise true that the allegations of the reply are sufficient to constitute an avoidance of the release. McGill v. Louisville & N. R. Co., 114 Ky. 358, 70 S. W. 1048, 24 Ky. Law Rep. 1244.

If Hooks, at the time he signed the release, was imposed upon and deceived, in the manner testified to by him, a fraud was thereby practiced upon him and he had a right to assail its validity. It was claimed by him in his pleading and in his testimony that by the terms of the compromise, only the insurance was settled and paid. The release stated the damages for which he sues was settled. If it was represented to him by those who induced him to sign the release that the sums paid him as evidenced by it were being paid in settlement of the insurance and not for the damages sustained by his injury, it was not necessary that he return the money so received, before bringing a suit for the latter. Bliss v. New York Cent. & H. R. R. Co., 160 Mass. 447, 456, 36 N. E. 65, 39 Am. St. Rep. 504; Louisville & N. R. Co. v. McElroy, 100 Ky. 153, 37 S. W.

844, 18 Ky. Law Rep. 730; McGill v. Louisville & N. R. Co., supra.

Hooks testified that he was able to read the release, but did not read it. The parties who induced him to sign it did so by representing to him that it covered only the item of insurance; that he began to read it, and they induced him to discontinue reading it and to surrender it to them, by explaining they did not have time for him to read it. He unequivocally testified that he relied on those parties' explanation of the contents of the release; therefore, in the light of his own testimony, he is not estopped to question the validity of the release. Ross v. Oliver Bros. & Honeycutt, 152 Ky. 437, 153 S. W. 756; Continental Tobacco Co. v. Knoop, 71 S. W. 3, 24 Ky. Law Rep. 1268; Goins v. North Jellico Coal Co., 140 Ky. 323, 131 S. W. 28; Western Mfg. Co. v. Cotton & Long, 126 Ky. 749, 104 S. W. 758, 31 Ky. Law Rep. 1130, 12 L. R. A. (N. S.) 427.

It was within the province of the jury to accept the testimony of Hooks as to this issue or that of the witnesses of the coal company. With the evidence conflicting, it cannot be said as a matter of law that he had accepted the sums paid him in full satisfaction of the claim for damages sought in the petition. He was entitled to have this issue submitted to the jury, and if it believed from the evidence that the sums paid him, or any part thereof, was paid in settlement of his demands against the coal company, to find for it as to this issue. McGill v. Louisville & N. R. Co., supra; Ross v. Oliver Bros. & Honeycutt, supra; Continental Tobacco Co. v. Knoop, supra.

The coal company presents, and relies upon as controlling this issue, Howell v. Louisville & N. R. Co., 251 Ky. 662, 65 S. W. (2d) 748. In that case there was neither a conflict of the evidence, nor any evidence tending to establish that the alleged settlement relied upon as a bar to the plaintiff's recovery only embraced the item of lost time. The plaintiff testified thereon in this respect, "that on account of his mental condition he did not know for what he was settling," but there was no plea of avoidance resting upon his mental condition.

It is apparent it is our view the court was not authorized nor justified in giving the peremptory instruction as to the issue concerning the release.

784

The rule is that an employer not operating under the Compensation Act (Ky. Stats., sec. 4960), in an action by an employee for injuries sustained, cannot rely on the defenses of contributory negligence, assumed risk, or the negligence of a fellow servant, but the employee in such action must allege and prove a prima facie case of negligence to have the issues submitted to the jury. Helton v. Gunn Coal Mining Co., 258 Ky. 168, 79 S. W. (2d) 695; Baker v. High Splint Coal Co., 258 Ky. 786, 81 S. W. (2d) 577. This rule made it incumbent upon Hooks to establish the specific acts of negligence alleged in his petition, which must be determined by the evidence which we shall now review.

At the time he sustained the injury to his hand, it was not the duty of Hooks to operate the pump against which he claims he fell and injured his hand. The allegations setting forth his cause of action charge that the coal company had negligently failed to cover or protect the pump, so as to keep the employees coming near it from being thereby injured when it was being operated, and that this exposed condition of the pump was the proximate cause of the injury to his hand.

It must be observed that Hooks based his cause of action on specific acts of negligence of the coal company, in that he alleged that the injury to his hand was "solely due to the negligence and carelessness" of the coal company "failing to have a guard board, in and around the pump, so as to prevent accidents" to its employees; that it failed "to keep a signal light of any kind near the pump," so as to warn employees of its presence. In short, the effect of his allegations is that the unguarded, unprotected condition of the pump was the proximate cause of the injury to his hand. To be actionable, the defendant's negligence must be the proximate cause of the accident producing the injury. Wright v. L. C. Powers & Sons, 238 Ky. 572, 38 S. W. (2d) 465; Button x. Pinckley, 253 Ky. 323, 328, 69 S. W. (2d) 347; Boden v. Harter, 240 Ky. 138, 41 S. W. (2d) 920. As the term is generally defined, " 'proximate cause' is that cause of an injury, which, in natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury, and without which the injury would not have happened, or it is that act or omission which immediately causes or fails to prevent

the injury." See Wigginton's Adm'r v. Louisville Railway Co., 256 Ky. 287, 75 S. W. (2d) 1046, 1050; Stacy v. Williams, 253 Ky. 353, 69 S. W. (2d) 697.

"Proximate cause" is otherwise defined to be "that cause which naturally leads to, and which might have been expected to have produced, the result. The connection of cause and effect must be established. And if a cause is remote and only furnished the condition or occasion of the injury, it is not the proximate cause thereof. Logan v. Cincinnati, N. O. & T. P. Ry. Co., 139 Ky. 202, 129 S. W. 575 The proximate cause is a cause which would probably, according to the experience of mankind, lead to the event which happened, and remote cause is a cause which would not, according to such experience, lead to such an event." Suter's Adm'r v. Kentucky Power & Light Co., 256 Ky. 356, 76 S. W. (2d) 29, 32.

When the allegations of Hooks' petition and his testimony are examined and analyzed in the light of the terms "proximate cause" and "remote cause," as defined above, in reality, the pump to which he confines his allegations of negligence was not the proximate cause, but the remote cause, of the injury to his hand. He specifically alleges, and positively testifies, that the slipping of his foot was the proximate cause of his fall; but he neither alleged nor testified that the coal company owed him any duty, or violated any duty it owed him, relative to the condition of the track upon which he was walking; nor as to the water thereon.

An examination of his testimony, as it is contained in the record, also discloses that he failed to testify that the pump was not covered or protected at the time he fell, or when he was walking around the water on the track, or at all, or that it in any way caused his fall.

According to his own testimony, the presence of the water on, and the slippery condition of, the track on which he was walking, was the proximate cause of his fall, and the presence of the water pump merely furnished an unsafe place for his fall. His evidence falls far short of showing any negligence on the part of the coal company respecting the pump or its covering or otherwise, even if it be regarded as the proximate cause of his fall, the sequence of which was the cutting of his hand on the pump. Aside from this view, the testimony in behalf of the coal company establishes

that the pump was adequately and properly protected, and that Hooks' hand could and would not have been injured by the pump "without reaching over into it with his hand." Not only did he fail in his tesitmony to state that the pump was not covered and protected properly, or at all, but failed to contradict the testimony of the witnesses of the coal company disclosing how the pump was covered and protected, and that he had to reach over into it with his hand to produce the injury. At the conclusion of his own testimony, the court overruled the motion for a directed verdict. At the conclusion of all of the testimony, the court sustained the coal company's motion to give a peremptory instruction.

The rule is, if the plaintiff by a "scintilla of evidence" sustains his cause of action, he is entitled to have the jury pass on the issues, however much the defendant's evidence may overbalance the plaintiff's. Honaker v. Crutchfield, 247 Ky. 495, 57 S. W. (2d) 502; Stanley's Adm'r v. Duvin Coal Co., 237 Ky. 813, 36 S. W. (2d) 630. And where there is conflicting evidence, the verity of it is for the jury. Yates v. Mullins, 233 Ky. 781, 26 S. W. (2d) 757; Blue Diamond Coal Co. v. Robertson, 235 Ky. 425, 31 S. W. (2d) 701. Where the plaintiff's evidence tends to make out a cause of action, and that for the defendant tends to explain it away, or to contradict the facts which indicate a cause of action, the case should be submitted to the jury. Monohan et al. v. Grayson County Supply Co., 245 Ky. 781, 54 S. W. (2d) 311; Monohan v. Moorman, 245 Ky. 789, 54 S. W. (2d) 315.

An accordant rule is, if "when the case is submitted to the jury it will be bound to find a verdict for the defendant under the proof, it is proper for the court to instruct the jury peremptorily to find a verdict for the defendant. * * * Louisville & N. R. Co. v. Mounce's Adm'r, 90 S. W. 956, 28 Ky. Law Rep. 933." Dolle v. Melrose Properties, Inc., 252 Ky. 482, 67 S. W. (2d) 706, 708.

It is plain the evidence was not conflicting as to the issue of the proximate cause of his injury and the coal company was not negligent respecting the pump, and that the court properly directed a verdict for the coal company, although, as to the issue appertaining to the release and settlement, Hooks was entitled to have

it submitted to the jury. Wigginton's Adm'r v. Louisville Railway Co., supra; Stanley's Adm'r v. Duvin Coal Co., supra; Dolle v. Melrose Properties, Inc., supra.

Wherefore, the judgment is affirmed.