## Greenway et al. v. Watson.

(Decided March 26, 1937.)

GRANT E. LILLY for appellants.

ROSS & ROSS for appellee.

OPINION OF THE COURT BY JUDGE BAIRD—Affirming.

G. C. Greenway et al., filed their petition in the Madison circuit court in ejectment against C. R. Watson. Watson denied their title and right of possession, and affirmatively pleaded and set up ownership in himself, both by paper title and adverse possession. However, before the trial was had, the following agreement was entered into:

"It was further agreed by the parties that the record title to the property in contest was in the plaintiffs and that the defendant would rely on his plea of adverse possession."

Appellee withdrew his plea of ownership by virtue of paper title, and relied solely on a claim of ownership by adverse and continuous possession for the statutory time of 15 years or more. On that issue the action was tried before a jury. Verdict was rendered in favor of appellee. Appellants, from the judgment based on that verdict, appeal.

Counsel for appellant contend that the court erred in overruling his motion for a directed verdict at the conclusion of appellee's testimony. If counsel is correct in that contention, we need discuss no other alleged error. The long-established rule of this court is to the effect that, if there was competent evidence heard by the jury showing appellee's right of ownership by adverse possession to the land in controversy, it would have been error to have given a peremptory instruction.

To pass upon that question, it is necessary to examine the record, and see if appellee's evidence justifies such an instruction.

If we find upon examination that appellee and his immediate and remote grantors, by themselves, and tenants, were in the continuous possession of the strip of land in controversy under the claim of ownership, adversely, to a well-defined boundary for as long as 15 years next before the action was instituted, then his case is made out. Frye v. McKinley, 136 Ky. 31, 123 S. W. 321; Ball v. Loughridge, 100 S. W. 275, 30 Ky. Law Rep. 1123; Walling v. Eggers et al., 104 S. W. 360, 31 Ky. Law Rep. 1009; Hooks v. Cornett Lewis Coal Co., 260 Ky. 778, 86 S. W. (2d) 697.

Spasmodic and sporadic claims of possession and ownership are not enough. Watson v. Wilson, 150 Ky.

27, 149 S. W. 1120; Stephenson Lumber Co. v. Hurst et al., 259 Ky. 747, 83 S. W. (2d) 48; Arthur v. Humble, 140 Ky. 56, 130 S. W. 958.

It is not necessary that the well-defined boundary, referred to, be a fence or any inclosure, but there must be some evidence of a boundary, made so by a continuous cultivation to a certain point, or in some other manner, that the claim of ownership and possession will give notice to the adjoining owner, as the fence did, in the case under consideration. Abbott v. Perkinson, 144 Ky. 495, 139 S. W. 745, Ann. Cas. 1913A, 747. In other words, to constitute adverse possession, as contemplated by the law, the one so claiming must show that his immediate and remote grantors were in the adverse possession of the land to a well-defined boundary, claiming it as their own. A flag of claim of ownership and possession must wave continuously for 15 years, the statutory period, in such a way, that the public may know the purpose and intention of the claimant. Brown v. Wallace (Ky.) 116 S. W. 763; Hall v. Blanton, 77 S. W. 1110, 25 Ky. Law Rep. 1400; Patton v. Stewart, 173 Ky. 220, 190 S. W. 1062; Courtney v. Ashcraft, 105 S. W. 106, 31 Ky. Law Rep. 1324; Bibb v. Daniels, 183 Ky. 659, 210 S. W. 454; Noe v. Russell, 213 Ky. 746, 281 S. W. 1033; Stephenson Lumber Co. v. Hurst et al., supra.

Watson stated before the jury that when he saw the land with the view of purchasing, and before he did purchase, and again at the time of the purchase, which was on the 18th day of April, 1921, and when he took actual possession of it, there was at that time an old picket fence, between this land and that of appellants'; that the fence was in the same place where the present one was situated at the time of the trial; that the south end of the old fence was wire, the other part board and plank mixed. At that time the kitchen of the residence extended back eight or ten feet; that the picket fence was further back three or four feet. From a map, that was exhibited to the jury, he located the kitchen and fence as they were before and at the time of his purchase, and stated that he later tore away this fence and built another in the same place as the old one; that he claimed to be the owner of the land inclosed by the fence and held it openly from the 18th day of April, 1921, to the filing of this action, either through himself

or by his tenants. The possession of the tenant is that of the landlord. Combs v. Ezell, 232 Ky. 602, 24 S. W. (2d) 301; Iseman v. Iseman, 226 Ky. 116, 10 S. W. (2d) 613.

He further stated that the kitchen that was there when he purchased it, and which extended toward the fence, he tore away for the purpose of remodeling his residence, and when he did so, it had the appearance of having been there for 20 or 30 years.

Buster Keaton, the husband of Kate Keaton, his immediate grantor, said, that the wire, plank and board fence, above referred to, was at the place stated by Watson, when he took possession under the sale of the land, made to him by his wife; that he and his wife claimed possession and ownership of the land to that old fence from the time she purchased it from Nora Stewart on the 18th day of April, 1918. Nora Stewart owned it and had possession from March 10, 1894, to her sale to Keaton, which was 50 years or more prior to the institution of the action. He stated that he and his wife lived upon the property until they sold it to Watson; that the new fence that was on the property at the time of the trial, was in the same place, or practically so, as the old one before it was torn out; that the situation of the kitchen was six or seven feet of the corner of the old house; that he and his wife, since his wife's purchase in 1918, used, claimed, and had continuous possession of the property up to the time it was purchased by Watson. These witnesses are corroborated in the main by a number of other witnesses.

The court, therefore, concludes, that applying the established rule, referred to, that has controlled trials before juries for many years, it would have been an inexcusable error on the part of the court to have given to appellants a peremptory instruction.

Counsel further complain that the court erred in the instructions given, and in failing and refusing to give instructions offered by appellants. In order that we may discuss the alleged error in the instructions, we refer to a pleading filed by appellants, which appears in an amended reply. By that amendment, appellants undertook to plead certain facts as an estoppel to appellee's plea of adverse possession. They plead, in sub-

stance, that in March, 1932, the Honorable Grant E. Lilly, as the attorney and representative of appellants, discussed with appellee the propriety of building and locating a line fence between the two pieces of land; that at that time, appellee did not claim to be the owner of the strip of land in controversy; nor did he claim to know the exact location of the dividing line; that it was then agreed between appellee and Lilly, the representative of appellants, as aforesaid, that at some future time, they would have the land surveyed, and in that way, establish the true division line; that in pursuance to that agreement, he, after giving due notice to appellee, had the land surveyed, which notice appellee ignored; that the survey showed the land in controversy to be included in appellants' deed; that this agreement and failure to comply with it on the part of appellee lulled his client in delaying the institution of his action, from March, 1932, to the 19th day of September, 1934, the time the action was filed. A motion was made by counsel for appellee to strike out that part of the amended reply, for the reason it did not constitute an estoppel. The court made no ruling. Appellee then, without waiving the motion, traversed the allegations of the amended reply. In our judgment, the facts set out in the amended reply did not constitute an estoppel, but those facts were admissible evidence on the question of adverse possession. On the trial, the court permitted Mr. Little and one, Charley Thompson, who claimed to be present when the agreement was made, as stated in their amended reply, to testify to said statements, which was denied by appellee. This testimony was strong evidence in refutation of the claim of adverse possession on the part of Watson.

The question involved here was fully passed upon in the case of Deupree et al. v. Walker et al., 255 Ky. 30, 72 S. W. (2d) 732, 733. In that case the court, in substance, held that: ''The statement was in no sense a contract, and required no consideration. It was a clear admission against interest, and therefore admissible, McConnell's Ex'r v. McConnell, 138 Ky. 783, 129 S. W. 106, not only to show that appellants did not claim the ground at the time it was written, but had never claimed it.''

The evidence as to the ownership and adverse possession of appellee to a well-defined boundary for more

than 15 years before the filing of the suit on the 19th day of September, 1934, was conflicting and contradictory. The evidence was to the effect that Kate Keaton and Nora Stewart, as immediate and remote grantors, had claimed the land to this fence for more than 15 years. Nothing would be accomplished should we repeat verbatim all the evidence offered and heard by the jury. We have referred to enough to justify the court in refusing the peremptory instruction asked for.

In discussing the instructions, it becomes necessary to embody them in this opinion. The instructions given by the court are as follows:

"1st. The jury will find for the plaintiffs, Greenways, the strip of land in controversy, unless

"2nd. They believe from the evidence that the defendant Watson and those under whom he claims, for fifteen years or more, prior to September 19, 1934, had been in the actual, adverse, open, notorious, peaceable and continuous possession of the strip of land in controversy, claiming the same as his own to a well marked and defined boundary; or by having the same under fence, in which case they will find for the defendant Watson and unless they so believe they will find for the plaintiffs under Instruction No. 1.

"3rd. The term adverse possession as used in these instructions, means the actual entry on the land in controversy by residence thereupon or enclosure thereon or some portion of the same, with the intention to possess and hold the entire tract as against all other persons."

The instructions offered by appellants and refused by the court are as follows:

"The court instructs the jury that if they believe from the evidence that the defendant and those under whom he claims after the first day of November 1918 were in the actual, peacable, quiet, uninterrupted and continuous possession of the land in contest, just prior to the 19th day of September, 1934, they will find for the defendant unless they further believe from the evidence that on or about the middle of March, 1932, the defendant informed the plaintiffs' agent that the defendant did not know where the line between plaintiffs and himself was located and did not then lay claim to the land and further believe that he then and there agreed to have the lines run out by survey and located

and if they believe that he made either of these statements, then he cannot rely on his plea of adverse possession and the jury will find for the plaintiffs.

"The court says to the jury by the term 'adverse possession' is meant the exercising of ownership over the land in contest by acts that are open, visible and hostile and under a claim of right, which acts must of such character as will the plaintiffs under notice that the defendant is claiming the land as a matter or right and with the intention of depriving the owner of the title thereto, and the court says that merely claiming the land is not an act of adverse possession."

The instructions given by the court present fully the law of the case. In fact, we think the instructions were aptly drawn. The court by instruction No. 1 stated that appellants, as a matter of law, by reason of their paper title, owned the land and were entitled to it, unless their ownership, by reason of their paper title, had been lost or surrendered by virtue of claim of ownership and adverse possession, as set out in instruction No. 2. In that event, they should find for the defendant. We see no error in that instruction. The second instruction, aptly, and as we think, correctly, gave to the jury the full meaning and definition of adverse possession, as used in the instructions. We see no error in that instruction. The instruction offered by appellants, conceded that the court's instruction was correct in part. However, we think that part of their instruction, based upon allegations set out in the amended reply, was error. The court, however, permitted the jury to hear the testimony of the plaintiffs' agent, and Thompson, as to what they claimed Watson said about not knowing the location of the dividing line, etc. It is error to call attention to specific testimony in an instruction. Such an instruction assumed that the agreements and statements, referred to, constituted a plea of estoppel to adverse possession, which it does not. Those facts, as we have before stated, were competent testimony to be heard by the jury to rebut the claim of adverse possession on the part of appellee, which question is fully presented in the instructions given by the court. We think the instruction of the court defining adverse possession presented clearly the full definition.

As we have before stated, the jury was the sole judge of the facts. The jurors saw the maps and pictures offered as evidence by the parties, heard the statements of the witnesses, looked them in the face as they testified, viewed and passed upon their demeanor when on the witness stand, and considered their interests or bias in the action. They might have decided in favor of appellants under the testimony offered. Had they done so, their verdict would have been upheld. We will not undertake to say that the verdict of the jury was improper or was flagrantly against the evidence, for it was not. To do so, we would violate the long-established rule of the court and take from the jury its prerogative of passing upon facts.

Appellee insists that photographs or pictures offered by appellants were incompetent, especially in the way and manner presented. We have some doubts to that effect, but as the verdict was for appellee, he cannot complain.

It is the conclusion of the court that no error was committed that affected the substantial rights of appellants.

The judgment is affirmed.