RENDERED:  JUNE 11, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1379-MR

BEVERLY RIDENOUR AND
MARSHALL RIDENOUR                                                    APPELLANTS


APPEAL FROM ROBERTSON CIRCUIT COURT
v.              HONORABLE JAY DELANEY, JUDGE
ACTION NO. 16-CI-00007


CAROLE HAYNES, EXECUTRIX OF
THE ESTATE OF URBAN A.
LANSER, SR.                                                              APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  GOODWINE, McNEILL, AND L. THOMPSON, JUDGES.

McNEILL, JUDGE:  Beverly and Marshall Ridenour ("Ridenours") appeal from

an order of the Robertson Circuit Court dismissing their claims against Carole

Haynes, executrix of the estate of Urban A. Lanser, Sr. ("Haynes").  Finding no

error, we affirm.

On October 16, 2015, the Ridenours purchased real estate at 1478 French Lane, Mt. Olivet, Kentucky, from Haynes for $250,000.00. The Ridenours inspected the property several times prior to the purchase. On one occasion, they noticed a soft spot on the kitchen floor and Haynes disclosed the area had previously been treated for termites. Before closing, the Ridenours hired Curtsinger Home Inspections, LLC to inspect the house. The inspection report notes "Previous wood destroying insects" in the basement ceiling and "The floor at the kitchen door is weak because of wood destroying insects." The Ridenours reviewed the report prior to purchasing the home but claim they were unaware of the above findings.

The Ridenours also hired A Action Pest Control of Kentucky, Inc. to perform a pest inspection. Their report states "No visible evidence of wood destroying insects was observed[,]" but further notes "Drill marks on exterior slab indicates previous treatment[.]" Additionally, the report provides: "The inspecting company can give no assurances with regard to work done by other companies." The Ridenours received the pest inspection report at closing but did not review it.

At closing, the parties also entered into a "Contractual Agreement and Acknowledgement" which provided in relevant part:

> During the period of the initial real estate contract for purchase of the realty being simultaneously being [sic] purchased today, it was discovered by all parties, that both improvements are in need of some necessary

repair to resolve issues, including, but not limited to water leaks, water damage, mold, bacteria, roof repairs, structural repairs.

That the buyers . . . are still desirous of proceeding with the purchase of the realty and the improvements in the known conditions as stated herein, and as known to them by their own inspections, and by their hired inspections, and agree to ACCEPT THE REALTY AND ALL IMPROVEMENTS IN THE CONDTIONS THERE [sic] ARE IN "AS IS", in exchange for the [seller] paying $5,000.00 of the proceeds of the sale back to the buyers . . . for necessary repairs to the improvements; AND, further, acknowledge no claims, representations, or warranties have been made by the sellers to the buyers as to condition of the improvements.

Thus, the buyers . . . in exchange for $5,000.00 . . . **forever waive any claim** they may assert against the Estate of Urban Lanser, Sr., as to condition and/or habitability of any improvements located on the realty[.]"

Further, the parties signed a document titled "Inspection Agreement" which states, in part, "BUYER(S) has made the inspections as agreed in the above referenced contract, and finds the property:  Satisfactory and no repairs are requested." It additionally provides: "The estate of Urban Lanser has given the Reinhours [sic] $5000.00 in lieu of repairs on the home and no longer have any liability to them."

Following the purchase, the Ridenours discovered evidence of termite damage and filed a complaint in Robertson Circuit Court on April 7, 2016[1] alleging negligence and breach of contract against Haynes.[2] On April 28, 2017, Haynes moved to dismiss the Ridenours' claims based upon the parties' settlement agreement. On January 16, 2018, the circuit court granted the motion to dismiss, holding the release barred the Ridenours' claims. The court found the Ridenours' failure to return the settlement money dispositive, citing the general rule that "[b]efore one can maintain an action to avoid a settlement and recover a larger amount he must return or tender a return of the sum received by him in the settlement." *McGregor v. Mills*, 280 S.W.2d 161, 162-63 (Ky. 1955). This appeal followed.

"An agreement to settle legal claims is essentially a contract subject to the rules of contract interpretation." *Cantrell Supply, Inc. v. Liberty Mutual Ins. Co.*, 94 S.W.3d 381, 384 (Ky. App. 2002). The primary objective is to effectuate the intentions of the parties. *Id.* "When no ambiguity exists in the contract, we

---

[1] An amended complaint was filed on December 7, 2016 adding D.G. Schell Realtors, LLC as a party defendant.

[2] The complaint also named A Action Pest Control of Kentucky, Inc. and Curtsinger Home Inspections, LLC as defendants and pled a third claim against them for violation of KRS 367.170, the Kentucky Consumer Protection Act. The Ridenours' claims against Curtsinger Homer Inspections, LLC were dismissed by summary judgment on November 10, 2016; their claims against A Action Pest Control and D.G. Schell Realtors, LLC were dismissed by agreement on August 12, 2019 and November 4, 2019, respectively. This appeal only concerns the Ridenours' claims against Haynes.

look only as far as the four corners of the document to determine the parties' intentions." *3D Enterprises Contracting Corp. v. Louisville & Jefferson Cty. Metro. Sewer Dist.*, 174 S.W.3d 440, 448 (Ky. 2005) (citation omitted). "The fact that one party may have intended different results, however, is insufficient to construe a contract at variance with its plain and unambiguous terms." *Cantrell,* 94 S.W.3d at 385. "Generally, the interpretation of a contract, including determining whether a contract is ambiguous, is a question of law for the courts and is subject to *de novo* review." *Id.*

On appeal, the Ridenours argue "the [r]elease only applied to known defects in the roof of an unattached garage, not the unknown and undisclosed termite damage in the . . . house." Therefore, they did not have to return the settlement money to pursue their claims, citing *Hooks v. Cornett Lewis Coal Company*, 260 Ky. 778, 86 S.W.2d 697 (1935). We disagree.

As the Ridenours acknowledge in their appellate brief, the release language is unambiguous. Looking only at the four corners of the document, it is apparent the parties intended the release to apply to all defects known to the Ridenours at the time of the purchase. The release references defects in "both improvements . . . including, *but not limited to* water leaks, water damage, mold, bacteria, roof repairs, structural repairs." (Emphasis added.) The phrase "but not limited to" clearly contemplates defects beyond those explicitly listed.

The release further states the Ridenours desire to purchase the property "in the known conditions as stated herein, and as known to them by their own inspections, and by their hired inspections[.]" Thus, the release pertains to defects explicitly listed, as well as those identified by the Ridenours' observations and professional inspections.

The Ridenours argue this language supports their interpretation because they were unaware of the termite damage at the time of closing. However, it is undisputed the inspection report lists termite damage and that the Ridenours had the opportunity to review the report prior to closing. Therefore, the termite damage was a condition known to the Ridenours "by their hired inspections."

Because the release applied to all known defects, including termite damage, the Ridenours had to return the settlement money before pursuing their claims. *McGregor*, 280 S.W.2d at 162-63 ("Before one can maintain an action to avoid a settlement and recover a larger amount he must return or tender a return of the sum received by him in the settlement.").

Citing *Hooks*, the Ridenours argue they are exempt from returning the settlement sum because the parties did not discuss termite damage nor did they intend for the release to waive liability for said damage. However, as noted above, the parties' intent must be determined solely from the language of the release. Further, the Ridenours misread *Hooks*. *Hooks* held that a party does not have to

return settlement money before pursuing a claim when there are allegations the settlement was procured by fraud. *Id.* at 699-700. The Ridenours have made no such allegations here.

Accordingly, the order of the Robertson Circuit Court is affirmed.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Escum L. Moore, III
Lexington, Kentucky

BRIEF FOR APPELLEE:

Jesse P. Melcher
Mount Olivet, Kentucky